TEA FULTON and J. T. TAYLOR, *Appellants*, v. CLEWISTON LIMITED and CLEWISTON COMPANY, INC., *Appellees.*

En Banc.

Opinion filed July 24, 1930.

*R. C. Horne, C. E. Smith* and *R. H. Rowe,* for Appellants;

*Doggett, Christie & Doggett,* for Appellees.

ELLIS, J.—As accurately as we are enabled to gather the facts of this case from the evidence, as shown by the record, they appear to be about as follows:

The Clewiston Development Company, whose activities seemed to be directed by I. T. Cook and F. D. Duff, was engaged in the early part of 1924 in acquiring subdivision of a tract of land in Section 16 of Township 43 South, Range 34 East, in Florida. The subdivision was to be known as Everglades Gardens Subdivision. These men and others, including B. G. Dahlberg, were preparing to organize a corporation to be known as Clewiston Limited. The corporation was organized later and afterwards its capital stock was increased and name changed to Clewiston Company, Incorporated. There was a tract of about fifty-five acres embraced within the area to be platted to which the Clewiston Development Company did not have title and which it desired to procure before proceeding with the work. Lying within the fifty-five acres was a tract of twenty acres consisting of four five-acre tracts, one of these five-acre tracts was owned by J. T. Taylor, who was a real estate broker located in Moore Haven. Mr. Cook and Mr. Duff, in August, 1924, began negotiations for the purchase of the property owned by Clewiston Development Company in behalf of Clewiston Limited, the corporation in process of organization of which Mr. Cook was to be president and of which he became president.

Later during the year, sometime in October or November and again in December, both Cook and Duff applied to J. T. Taylor to engage his services as real estate agent or broker to acquire the eleven five acre tracts for the Clewis-

ton Limited, which had acquired the properties of the Clewiston Development Company. Negotiations were completed with Mr. Taylor to acquire Lot One of Block Two, Lots Fifteen and Sixteen of Block Three and Lot One of Block Four of Everglades Gardens Subdivision. Those lots covered an area of twenty acres. Taylor owned one of the lots and said he had information as to the ownership of the other three. Cook and Duff told him that they would buy his lot at $200 per acre but they could not use it unless they could acquire the others, as they were necessary to their scheme of development of the area. Taylor agreed to act as their agent in procuring the other lots at what was then the estimated value of the land, about $150 or $200 per acre. Taylor expressed the opinion that the other tracts could be acquired at that price and possibly at one hundred dollars per acre.

No definite agreement was made as to commission or compensation to be paid him. Taylor then proceeded to purchase the other lots at one hundred dollars per acre and had the title conveyed to Tea Fulton, a woman living at Tampa, a friend of Taylor.

Several times prior to the completion of the organization of Clewiston Limited, Cook had conferences with Taylor about the purchase of the lots but Taylor seemed to procrastinate and delayed bringing the negotiations to a conclusion until sometime in April, 1925, when Cook and Dahlberg, talking with Taylor about the transaction, was informed by him that he wanted $500 per acre for his tract and that he thought that he would have to pay up to $300 per acre for the other land. He did not tell them the lady, Tea Fulton, had acquired them. Taylor was to report further what he could do in the matter. In the meantime Taylor was fully advised of the platting of the "Clewiston Townsite" and that it was almost necessary that the

Clewiston Limited Corporation should acquire the lots. The Taylor lands were in the center of the townsite and the other lands more to the west of the Taylor lands and south of the Cross-State Highway which intersects Clewiston running east and west.

Sometime after April, 1925, Taylor told Cook that he would have to deal with Mrs. Tea Fulton as she had purchased the lots; that Taylor had talked with her about the property; that he owed her some money and she wanted $1,500 an acre for the land. Cook informed Duff about this situation and Cook, Duff and Mr. Urban went to Tampa to confer with Mrs. Fulton about the property and she informed them that she would agree to whatever Taylor did in the matter. Soon after this Mr. Cook ceased to be president of the Clewiston Limited and was succeeded by Mr. Dahlberg. Several trips were made by Cook to see Mrs. Fulton, which resulted in no consummation of the trade.

At last the trade was closed. The Clewiston Limited acquired the property from Mr. Taylor and Mrs. Fulton at the price of $1,250 per acre. The price was agreed to by Cook but it seems that Dahlberg as president of the corporation concluded the trade. Cook did not inform Dahlberg of all the facts of which he became cognizant in his conversation with Taylor. Cook suspected but did not know of the actual fraud perpetrated by Taylor. Ten thousand dollars was paid on the purchase price of the land and the Clewiston Limited, by Dahlberg as president, executed its promissory note to Tea Fulton and J. T. Taylor jointly for fifteen thousand dollars, payable on or before six months after date. The note was dated October 23, 1925. A mortgage was executed by the company upon the property to secure the payment of the note.

On October 23, 1926, Mrs. Tea Fulton and J. T. Taylor exhibited their bill of complaint in the Circuit Court for Hendry County to foreclose the mortgage. Five thousand dollars had been paid on the note on July 1, 1926, as well as interest to that date. After the execution of the note and mortgage the Clewiston Limited Company changed its name to Clewiston Company, Incorporated.

The Clewiston Company, Incorporated, answered averring the facts as above stated in substance and charged fraud upon the part of Mrs. Fulton and Taylor and averred that the facts as fully recited in the answer were not discovered by the corporation until after the payment by it in July, 1926, of the five thousand dollars on the note. The answer averred that Mrs. Fulton had no interest in the transaction which was for the sole secret profit of Taylor; that the lands were not reasonably worth more than $300 per acre. The answer was followed by a cross bill in which the details of the transaction were alleged. Taylor was charged with fraud in his dealing with the cross complainant in the transaction; that the use of Mrs. Fulton in the transaction was for the purpose of carrying out the fraudulent scheme of Taylor; that she was never the owner of the land in good faith either in law or equity and that Taylor merely held her name out in the transaction to extort from the cross complainant an exorbitant and unreasonable price for the property; that as soon as Dahlberg learned of the fraud he took immediate steps to obtain an accounting from Taylor of his secret profits. The cross bill prays for an accounting against Taylor and that he be decreed to pay over to the Clewiston Company whatever sum may appear to have been paid to him in excess of the true, fair and reasonable value of the land; that the cross defendants, Mrs. Fuller and Taylor, be decreed to deliver up the mortgage and note to be cancelled and that

they be enjoined from seeking to collect any alleged balance due thereof and that the foreclosure suit be dismissed.

There were motions made to strike portions of the answer and the entire cross bill. The motion to strike the cross bill was denied but the affirmative part of the answer, which was also contained in the cross bill, was stricken. The cross defendants answered severally and the case was referred to a master to take testimony.

The chancellor, on the 28th of June, 1928, rendered a final decree. He found that the defendants and cross complainants had established the averments contained in their answer and cross bill by a "clear preponderance of the evidence"; that the mortgage was not a valid and subsisting mortgage upon the property because of the fraud practiced by the complainants upon the defendants and that four thousand dollars is "all that the cross complainant should have been required to pay for said twenty (20) acres." The chancellor decreed that the equities of the cause were with the defendant and cross complainant and ordered that the foreclosure suit be dismissed and that the complainants be denied the relief prayed; that the fifteen thousand dollars which the defendants had paid was far in excess of a just, fair and reasonable sum for the purchase of the land and ordered eleven thousand dollars of that amount to be paid by the defendants to the cross complainants. The court also decreed that the title to fifteen acres of land purchased from Moore by Taylor with money obtained from Tea Fulton was held in trust for the cross complainants.

From that decree the complainants and cross defendants appealed.

We think that the decree of the chancellor should be affirmed in every particular. It was fully supported by the pleadings and evidence in the case and was a clear,

comprehensive and logical application of the principles of equity and controlling the transaction.

The relation of principal and agent existing between the corporation and Taylor in the matter of the acquisition of the land was established by the evidence in the judgment of the chancellor and we find abundant evidence in the record to support the finding. The complainant, it is true, contended otherwise and Taylor by his testimony denied the relation but on that point the evidence was conflicting and that which existed in support of the defendants' and cross complainants' contention was both direct and circumstantial.

The contention of the complainants and cross defendants that the purchase of the property by the company under the presidency of Dahlberg was a ratification and confirmation of the price agreed upon by the parties at the time of the execution of the mortgage and was again ratified and confirmed by the payment of five thousand dollars in July, 1926, on the balance of fifteen thousand dollars due for the purchase price is not sound because in the first place it is not at all apparent from the evidence that Isaac T. Cook, who began the negotiations with Taylor and secured his services as agent for himself and associates who formed the Clewiston Limited Corporation and in whose interest the transaction was carried on, knew at the time he was succeeded in the presidency by Dahlberg all the facts which tended to establish the fraudulent character of Taylor's activities. Cook strongly suspected the good faith and fair dealing of Taylor and communicated his suspicions to Dahlberg but the view which they seemed to have of the activities of Taylor at the time was that through gross carelessness, inattention to the business and procrastination he had failed to acquire the property at its fair value and he was censured by them because of his cupidity in

regard to the price he demanded for his own lot when he discovered the company's necessity. It was not until after the transaction was closed that Dahlberg discovered the facts which colored Taylor's activities with fraud and showed his breach of the obligations resting upon him by virtue of his agency and the use he made of Mrs. Fuller to execute his fraudulent purposes.

To hold that the execution of the mortgage and payment of the five thousand dollars on the alleged balance due to be a ratification of the transaction would be to lend equity's aid to support the complainant in a series of fraudulent actions consisting of a breach of his obligations to his principal resulting in profit to himself.

Nor do we think that there is any substantial variance between the case made by the pleadings and that made by the evidence. The allegations and averments of the pleadings are comprehensive enough to cover all the evidence that was adduced. A discussion of it in detail would be of no practical value. The appellants fail to show from the record that the chancellor's findings of fact were erroneous. While the evidence was conflicting we are not prepared to say that the judge erred in his conclusions.

This Court, by a long line of decisions, has held that while the findings of a chancellor on the testimony taken before an examiner will not be given the same effect as a verdict of a jury, his conclusions solely on the facts will not be reversed unless it clearly appears that he has erred in such conclusions. See Waterman v. Higgins, 28 Fla. 660, 10 So. R. 97; Bothamly v. Queal, 58 Fla. 396, 50 So. R. 415; Theisen v. Whiddon, 60 Fla. 372, 53 So. R. 642; Bank of Jasper v. Tuten, 62 Fla. 423, 57 So. R. 238; Barnes & Jessup Co. v. Williams, 64 Fla. 190, 60 So. R. 787; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 So. R. 216.

As to the range which the evidence covered and the contention that it was outside the scope of the issues made by

the pleadings, it must be remembered that where fraud is alleged in an equity proceeding to annul a contract procured by it a wide latitude is permitted in seeking evidence of it. See Volusia County Bank v. Bigelow, 45 Fla. 638, 33 So. R. 704.

Likewise it has been held and may be considered as the established doctrine in this jurisdiction that when the relation of principal and agent exists the principal is entitled to all the skill, ability and industry of which the agent is capable in his principal's interest and the exercise of the utmost of good faith on the part of the agent toward his principal to the end that the principal, not the agent, may benefit by the work to be accomplished. See Boswell v. Cunningham, 32 Fla. 277, 13 So. R. 354; Burnham City Lumber Co. v. Rannie, 59 Fla. 179, 52 So. R. 617.

The existence of such a fiduciary relation as that of principal and agent precludes the latter for taking advantage of his employer or to use any knowledge acquired by such relation to his injury and the personal pecuniary advantage of the agent at his employer's expense. See Thomas v. Goodbread, 78 Fla. 278, 82 So. R. 835; Quinn v. Phipps, 93 Fla. 805, 113 So. R. 419.

The decree appealed from is affirmed.

TERRELL, C. J., AND WHITFIELD, STRUM AND BUFORD, J. J., concur.

BROWN, J., dissents.