629 So.2d 849 (1993)
BARNETT BANKS TRUST COMPANY, N.A., as Trustee of the Wilber C. Compson Revocable Trust Dated January 25, 1990, Petitioner,
v.
Mary C. COMPSON, individually, and Mary C. Compson as the Trustee of the Mary C. Compson Trust Dated February 7, 1990, Respondents.
Nos. 92-02719, 92-02814.
District Court of Appeal of Florida, Second District.
January 20, 1993.
Rehearing Denied December 14, 1993.
Joseph D. Stewart of Hardt & Stewart, Naples, for petitioner.
Timothy Parry of Harter, Secrest & Emery, Naples, for respondents.
PER CURIAM.
Barnett Banks Trust Company, N.A. (Barnett), as trustee of the Wilber C. Compson Revocable Trust, seeks certiorari review of the circuit court's order compelling discovery of documents which Barnett asserts are privileged. This case involves the question of whether a trust beneficiary who litigates a position adverse to the trust may obtain from the trustee materials ordinarily protected by the attorney-client privilege and work product doctrine. We find the adverse beneficiary may not obtain such materials and therefore grant the petition.
In 1986, Wilber C. Compson executed a will. The will included a testamentary trust of qualified terminal interest property (Q-TIP). Ninety percent of the residuary estate of the will consisted of the Q-TIP trust for Mrs. Compson, and the remaining ten percent was designated for Mr. Compson's brother, Howard. Two educational institutions, Syracuse University and Phillips Exeter Academy, held the remainder interests in the Q-TIP trust. In 1990, Wilber Compson changed his estate plan and created a revocable trust with the same testamentary distribution scheme as the prior will. Barnett was named as trustee.
*850 The day after the trust was created, Wilber Compson directed Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) to transfer all of the securities held in his individual account worth approximately two million dollars to a trust account with Barnett.[1] A few days later, Mr. Compson changed his directive to Merrill Lynch by requesting that half of the assets be transferred to Mrs. Compson individually. Merrill Lynch complied with this second request. Mr. Compson died a few months later.
In this action, Barnett as trustee sued Merrill Lynch and Mrs. Compson for declaratory relief seeking to have the court determine whether the second directive and transfer were invalid under the terms of the revocable trust agreement. Mrs. Compson responded by filing counterclaims against Barnett for breach of fiduciary duty and negligence. She claimed that Barnett had a duty to inform Mr. and Mrs. Compson about any technical deficiency in the form of the second directive so that the deficiency could be corrected by Mr. Compson before his death. Barnett then sought to regain the $923,000 worth of trust assets by amending its complaint to add a claim of mistake and of undue influence in procuring a gift of trust assets.
When Barnett filed suit, it retained the law firm of Hardt & Stewart to handle the actual litigation. Barnett had apparently retained Myers, Krause & Stevens (Myers, Krause) for purposes of evaluating the tax aspects of the revocable trust and the gift tax ramifications of the posttrust transfer to Mrs. Compson.[2] Myers, Krause has provided assistance with the litigation. The trust beneficiaries other than Mrs. Compson, or the aligned beneficiaries,[3] apparently retained their own counsel. The aligned beneficiaries are not parties in this certiorari proceeding.
Both firms have informed Barnett about the suit. Barnett has discussed the case with the aligned beneficiaries, and both firms have disclosed their opinions and strategy to the aligned beneficiaries' attorneys. Mrs. Compson requested all correspondence among these entities. Barnett acknowledges that Mrs. Compson as a beneficiary of the trust has the right to production of documents with regard to the administrative matters of the trust including the tax issues. Barnett seeks to protect from disclosure only those documents involving this lawsuit.
The trial court compelled the production of the following documents: 1) correspondence between Hardt & Stewart and the aligned beneficiaries' attorneys, 2) correspondence between Myers, Krause and Barnett, 3) correspondence between Barnett and the aligned beneficiaries, 4) correspondence between Myers, Krause and the aligned beneficiaries' attorneys, and 5) a draft of the litigation budget.[4] The trial court withheld ordering the production of billing statements of Hardt & Stewart and Myers, Krause, on the condition that the attorneys are not compensated from the corpus of the trust. In compelling disclosure, the trial court relied on section 737.303(3), Florida Statutes (1991),[5] and Riggs National Bank v. Zimmer, 355 A.2d 709 (Del. 1976). We find that neither the statute nor Riggs requires disclosure in this case.
Mrs. Compson asserts that the attorney-client privilege and the work product doctrine do not apply in view of the statutory requirement that Barnett as trustee disclose *851 all affairs of the trust to all beneficiaries. Mrs. Compson relies heavily on the fact that Hardt & Stewart and Myers, Krause have been charging the trust for work performed in relation to the litigation. Barnett contends that the documents are privileged and that the attorneys may be compensated from the trust corpus for work related to the litigation. Barnett further claims that the "joint defense" or "common interest" exception to the attorney-client privilege and work product doctrine applies to overcome any asserted waiver.
Section 737.303(3), which requires the trustee to keep the beneficiaries reasonably informed about the trust and its administration, does not alter the attorney-client privilege or work product doctrine in this case. Section 737.301 places a broad general duty on the trustee to administer the trust diligently. The statute, however, does not require disclosure of privileged materials concerning a pending lawsuit in which an individual, who happens to be a beneficiary, seeks to deplete, rather than return, trust assets.
Mrs. Compson countersued the trustee essentially claiming her right to retain the assets transferred to her after the trust was created. Thus, Mrs. Compson does not stand to gain in her capacity as a beneficiary of the trust because she does not advocate the return of the trust assets to the trust. She chooses to benefit only as the recipient of the trust assets in her individual capacity. Unlike the beneficiaries' claim in Riggs, Mrs. Compson's claim is not akin to a surcharge claim brought by a beneficiary of a trust.[6]
The Riggs court's analysis hinges on a finding that the beneficiaries were the real clients of the trustee's attorney. Here, the real client is not Mrs. Compson. The opinions and strategy relating to the litigation were provided to the trustee to enable it to regain the assets of the trust and thereby diligently administer the trust to benefit the beneficiaries. Although Mrs. Compson may be a beneficiary of the trust, her position in this suit is antagonistic to the aligned beneficiaries and to her status as a beneficiary of the trust. Mrs. Compson does not stand to benefit from the trustee's actions in this suit. Thus, under the Riggs analysis, she is not the real client of the trustee's attorneys. The real client of the law firms is the trustee. Cf. Rule 4-1.7, Rules Regulating the Florida Bar (comment) (personal representative is the client rather than the estate or beneficiaries). We therefore find that the attorney-client privilege, belonging to the trustee as client, prohibits disclosure of communications among Hardt & Stewart, Barnett, and Myers, Krause absent any waiver.
We further find that the sharing of the information among all the firms, the trustee, and the aligned beneficiaries did not constitute a waiver of any privilege. The aligned beneficiaries' interests coincide with the trustee's. The "common interest" or "joint defense" exception applies among the entities sharing common interests and their attorneys. Visual Scene, Inc. v. Pilkington Brothers, 508 So.2d 437 (Fla. 3d DCA 1987). In this case, the trustee and aligned beneficiaries share the common interest of regaining the trust assets from Mrs. Compson.
The trustee's charging its attorneys' fees to the trust does not change our decision under the facts of this case. Before the attorneys' fees are paid from the trust corpus, the trustee has the burden of demonstrating that the expense was reasonably necessary and was incurred for the benefit of the trust. See Ball v. Mills, 376 So.2d 1174, 1179 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1116 (Fla. 1980).
Based on the above analysis, we find that the court erred in compelling discovery of the information exchanged among the various entities. We also find that it erred in compelling discovery of the proposed litigation budget, which contains the strategy and opinions of Hardt & Stewart about this suit. Accordingly, those portions of the circuit's *852 court order compelling disclosure inconsistent with this opinion are quashed.
Petition for writ of certiorari granted.
RYDER, A.C.J., and FRANK and ALTENBERND, JJ., concur.
NOTES
[1] It is disputed whether Merrill Lynch then transferred all the assets from Mr. Compson's personal account into a separate trust account with Merrill Lynch naming Barnett as trustee. In any event, it is undisputed that Merrill Lynch never transferred any assets to a trust account with Barnett.
[2] It also appears that Myers, Krause is the firm representing Barnett as personal representative of the estate of Mr. Compson.
[3] The aligned beneficiaries are Howard Compson and the two educational institutions.
[4] The court intimated that it may require production of all of these documents in a legal malpractice action filed by Barnett against Mr. Compson's estate attorney. In that action, Barnett is seeking to recover the litigation expense as an element of damages. We refrain from deciding an issue that has not been ruled on by the circuit court.
[5] Section 737.303(3) provides that "[u]pon reasonable request, the trustee shall provide any vested beneficiary with relevant information about the assets of the trust and the particulars relating to administration."
[6] In Riggs, all of the trust beneficiaries sued the trustee for his alleged breaches of the trust regarding tax matters.