715 So.2d 979 (1998)
FIRST UNION NATIONAL BANK OF FLORIDA, etc. Petitioner,
v.
Jane R. WHITENER, Respondent.
No. 97-2630.
District Court of Appeal of Florida, Fifth District.
June 12, 1998.
Rehearing Denied August 20, 1998.
*980 Gregory A. Presnell, and Stacey C. Rosenthal, of Akerman, Senterfitt & Eidson, P.A., Orlando, for Petitioner.
Mel Pearlman, of Mel Pearlman, P.A., Fern Park, and Lee H. Schillinger and John A. Brekka, Jr., of Law Offices of Lee H. Schillinger, P.A., Hollywood, for Respondent.
PER CURIAM.
Petitioner seeks certiorari review of a discovery order of the lower court releasing a substantial number of attorney-client documents containing communications between the petitioner trustee and its attorneys from 1988 through 1995.[1] For the reasons set forth below, we grant the writ and quash the order.
The action below is a breach of fiduciary duty action where a trust beneficiary claims the trustee bank, through its neglect or misconduct, diminished the value of the only asset of the trust, an interest in a purchase money mortgage on marina and waterfront property. Prior to the order under review, the lower court had been provided with a similar discovery issue involving three letters written in 1988 by one of the trustee's attorneys, William G. Cooper. The lower court determined there was an attorney-client relationship between the trustee and Cooper, but accepted respondent's argument that there *981 was sufficient evidence of fraudulent concealment to abrogate the privilege. Petitioner sought certiorari review of the prior order. Respondent urged not only the fraud exception to attorney-client privilege but waiver because the three letters had already been voluntarily disclosed by petitioner through discovery. This court denied the trustee's petition without opinion. Subsequent to this court's denial of certiorari, the beneficiary sought even more attorney-client communications between the trustee and its attorneys. The lower court, noting this court's previous denial of the trustee's petition for writ of certiorari, ruled the documents discoverable. Then, without giving the trustee a chance to seek certiorari review, the judge, in open court, released all of the documents which had been produced for in camera inspection.

BACKGROUND FACTS
The trust was created in 1982, after Robert Turney sold marina and waterfront property to a partnership controlled by Wilbur Boyd and his family. Turney created the trust, and the sole asset was a 62.8% interest in the $2,972,000 promissory note secured by a purchase money mortgage on the waterfront property. The note went into default in 1987, foreclosure proceedings were initiated in 1988 and the waterfront property was sold in 1995 at a substantial loss to the trust.
The trustee bank is First Union National Bank (formerly Florida National Bank). The trust department of the Jacksonville branch administered the trust. In 1982, the Miami branch of the bank made a commercial loan to the Boyd family in the amount of $1,180,000, payable in eighteen months. Boyd and Turney agreed to subordinate the trust's purchase money mortgage to this commercial loan. The beneficiary asserts that Turney required the Boyd family to personally guarantee the commercial loan. Shortly thereafter, Turney died before the subordination agreement was formally executed. The beneficiary maintains that the Miami branch then changed the commitment by permitting an extension of six months, and deleted one of the Boyds as a guarantor. After the loan closed, the Miami branch demanded that the trustee in Jacksonville execute the subordination agreement, and the trustee complied.
The Miami commercial loan was not timely repaid, and several more extensions were granted. In March, 1985, the trustee received notice from the Boyds' attorney that the Boyds intended to pay the Miami commercial loan with funds from two other loans to be made to the Boyds by the County Bank of Bradenton. The County Bank was controlled by the Boyds. The trustee refused to subordinate the purchase money mortgage to the County Bank loans. County Bank still made its loans, with a provision for subrogation of their respective mortgages to the first lien of the Miami commercial loan.
In 1986 the trustee's real estate department obtained confirmation that the Miami commercial loan had been satisfied. At that point the trust officer concluded that the purchase money mortgage was in first lien position. In 1987, County Bank was taken over by the FDIC. On maturity and default of the purchase money mortgage, the FDIC claimed to hold a superior position to the purchase money mortgage by virtue of the County Bank loans used to satisfy the Miami commercial loan. After the trustee initiated foreclosure proceedings in 1988, the FDIC filed a counterclaim alleging subrogation. The beneficiary hired counsel to explain the proceedings to her. The trustee then retained William G. Cooper, Esq., because of his experience in complex commercial litigation, and to review another attorney's recommendation that the bank should advance approximately $200,000 to construct new docks at the marina. After meeting with the beneficiary and her attorney, he drafted letters to the trustee acknowledging that the Miami commercial loan had been paid with funds from the County Bank loans, and recommending that the trustee might want to take steps to terminate the trust. Cooper also gave his opinion on the dock construction issue.
In response to an accounting, the beneficiary filed her initial complaint in 1993. As part of a settlement agreement between the FDIC and the trustee in 1990, the marina and waterfront property was eventually sold at auction in 1995 for $1,650,000 and FDIC *982 received $1,029,460. After the trustee deducted its fees and costs, the beneficiary was given a statement showing her distribution share was a negative $6,870.

Preliminary Considerations
As an initial issue, it must be determined whose interests were represented by the attorneys hired by the trustee. If the client is the beneficiary, then a showing of a fraud is not necessary, as the beneficiary would be the holder of the attorney-client privilege. However, if the "true" client is the trustee, then the beneficiary would have to prove the existence of fraud or some other exception to overcome the privilege.
In the instant case, because of the ongoing foreclosure proceedings in 1988, FDIC's claim of subrogation, and complaints and threats of litigation by the beneficiary and her counsel, the trustee realized there were problems, including a perceived conflict of interest, and therefore retained William Cooper for legal advice. Therefore, it appears that Cooper's true client was the trustee, not the beneficiary. See Barnett Banks Trust Co., N.A. v. Compson, 629 So.2d 849 (Fla. 2d DCA 1993); Paskoski v. Johnson, 626 So.2d 338 (Fla. 4th DCA 1993); In re Estate of Gory, 570 So.2d 1381 (Fla. 4th DCA 1990).
Factual questions in these types of cases are never easily resolved. Although it seems fairly clear that the trustee hired counsel because of the foreclosure proceedings and problems with the trust, the respondent beneficiary and her attorney testified that they had been led to believe by Cooper that the trustee had retained him for the benefit of the trust and beneficiaries. However, the respondent beneficiary had already retained her own counsel in May 1988, and was questioning the trustee's conduct before the trustee retained Cooper for legal advice in September, 1988. It therefore appears that the trustee retained Cooper for its own benefit as the trial court found in the previous order which was the subject of the first certiorari proceeding.

Fraud
Section 90.502, Florida Statutes (1995), provides that there is no attorney-client privilege when the services of the lawyer are sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud. The party seeking to invoke the fraud exception must present prima facie evidence that the client sought the advice of counsel to procure a fraud. See Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); Shell Oil Co. v. Par Four Partnership, 638 So.2d 1050 (Fla. 5th DCA 1994).
The respondent beneficiary has no shortage of claims of fraud; however, they all resolve into various sorts of breach of the fiduciary duty owed by the bank as trustee to the beneficiaries. The beneficiary's complaint in this case essentially alleges that the trustee negligently or intentionally acted in conflict with the beneficiary's interests and then concealed its multiple breaches of fiduciary duty.
Constructive fraud is the term typically applied where a duty under a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken. Constructive fraud may be based on misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party. See Fulton v. Clewiston, Ltd., 100 Fla. 257, 129 So. 773 (1930); Pryor v. Oak Ridge Dev. Corp., 97 Fla. 1085, 119 So. 326 (1928).
Our review of the documents and the record discloses no "fraud" that would abrogate the attorney-client privilege. The three Cooper letters which were voluntarily disclosed and were the subject of the first certiorari proceeding show that Cooper gave the bank his opinions concerning several issues regarding the foreclosure action, including the subrogation theory raised by the FDIC, the dock permits question, and how to administer the trust in light of the perceived problems. None of these letters show that Cooper was aiding a contemplated fraud. The letters do not show that Cooper advised on how to steal the trust's assets, or how to otherwise enrich the trustee at the expense of the beneficiary. The respondent beneficiary testified that she met with Cooper, who *983 assured her that the trustee was protecting her interests and the interests of the trust. While this testimony may support the claims of conflict of interest and breach of fiduciary duty, this falls short of establishing that Cooper was aiding a fraudulent scheme. The record evidence suggests a true attorney-client relationship, not a conspiracy where the attorney was merely an agent of the client's fraud. By the time Cooper was retained, the acts which harmed the trust had already taken place; the County Bank loans had been made and used to satisfy the Miami commercial loan, and the FDIC had already advanced its subrogation claim.
The beneficiary also alleges concealment of material facts by the trustee prior to 1988, before Cooper was retained. For example, the beneficiary claims that the trustee concealed the fact that the subordination agreement executed after Turney's death did not conform to his intent, and that the beneficiary was not informed of the subrogation clause in the County Bank loans. These concealments, likewise, might constitute evidence of a conflict of interest and a breach of fiduciary duty, but there is no evidence to suggest they were deliberately planned with the aid of an attorney to commit a fraud against the beneficiary. It was the FDIC which received the bulk of the proceeds from the auction sale. Moreover, the confidential communications disclosed in this case were made from 1988 through 1995. Any concealment that occurred prior to 1988 is not relevant to the issue of whether the trustee's attorneys assisted in committing any frauds from 1988 through 1995.
As Wigmore has noted, it is difficult to define the boundaries of the fraud exception to the attorney-client privilege. The culpable client, as well as the innocent one, is generally entitled to confidential communications with an attorney. Wigmore also draws a distinction as to whether the fraud was committed before or after the attorney was hired. See 8 Wigmore, Evidence § 2298 (McNaughton rev.1961). See also McCormick on Evidence Vol. 1, § 95 (4th ed.1992). If the legal advice concerns a wrongdoing to be carried out in the future, no privilege would exist. See, e.g., United States v. Bob, 106 F.2d 37 (2d Cir.), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939); Standard Fire Ins. Co. v. Smithhart, 183 Ky. 679, 211 S.W. 441 (1919); Strong v. Abner, 268 Ky. 502, 105 S.W.2d 599 (1937); State v. Ross, 312 Mo. 510, 279 S.W. 411 (1925). On the other hand, a client who in the past has committed a wrongdoing is entitled to confidential communications and advice from an attorney. The facts in this case suggest that when problems arose, petitioner consulted with attorneys from 1988 through 1995 on how to proceed. There was no evidence that any attorney was part of a criminal or fraudulent enterprise.
The proceeding below consisted of a very brief hearing where the trustee's time for argument on this very important issue was severely limited and the trustee was not allowed to present evidence. Cf. Haines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir. 1992); American Tobacco Co. v. State, 697 So.2d 1249 (Fla. 4th DCA 1997) (the importance of attorney-client privilege as well as fundamental concepts of due process require that the party defending the privilege be given an opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege). The court based its finding upon its review of the record in the first certiorari proceeding and the in camera inspection of the contested documents. The court did not distinguish whether the fraudulent concealment occurred prior to Cooper's representation, or after the trustee retained him as counsel. Furthermore, the previous order did not specifically find that Cooper assisted in the fraudulent concealment. The court merely referred to Cooper's letters as proof of fraud, leaving open the question as to whether the letters were proof of Cooper's participation in a fraud, or whether the letters refer to fraud which occurred prior to his representation. Likewise, the present order under review, while reaffirming the finding of fraud, did not find that any of the trustee's attorneys assisted in any fraudulent conduct from 1988 through 1995. In the instant case, the beneficiary failed to make the required prima facie evidence of an exception to the attorney-client privilege. The privileged documents themselves cannot *984 be used to establish the threshold showing. See U.S. ex rel. Mayman v. Martin Marietta Corp., 886 F.Supp. 1243 (D.Md.1995). We conclude the record is devoid of evidence to support a finding that the trustee obtained or used Cooper or any other attorney to perpetrate a fraud against the trust beneficiary.

Waiver
The respondent beneficiary argues further that any attorney-client privilege was waived by the voluntary disclosure of the three Cooper letters, as well as other communications between various attorneys and the trustee. For example, Timothy Flanagan, the bank's in-house tax attorney, was hired by the trustee in 1991 when it was sued by Michael Dingnam, another attorney, for unpaid fees. The beneficiary asserts that the trustee has voluntarily disclosed Flanagan's handwritten notes which were created and maintained in the normal course of business. Also voluntarily produced was a memo from Flanagan to the head of the trust department concerning Cooper's role in the foreclosure proceeding and Cooper's advice to terminate the trust.
The trustee asserts that in disclosing the Cooper letters, it specifically stated that it was not waiving the attorney-client privilege. The beneficiary maintains that a party should not be able to disclose favorable documents that otherwise would be privileged, and at the same time rely on the same privilege to keep less favorable documents confidential.
The trustee originally listed 248 documents as privileged. The trial judge in the order under review stated that after an in camera inspection, 90 of the documents were not privileged attorney-client communications. The trustee subsequently waived its earlier claim of privilege as to 53 of the documents. At issue, then, is the remaining 195 documents.
The record of this case does not show that the trustee intended to waive the attorney-client privilege as to all communications with its attorneys concerning the trust from 1988 through 1995. This intent must be clear. If there is not an intentional waiver as to all attorney-client communications, case law recognizes a limited waiver by implication where a client voluntarily produces certain privileged documents. In those cases the client is said to have waived his privilege for all other correspondence on that specific subject. See 8 Wigmore, § 2327 at 637; Hoyas v. State, 456 So.2d 1225, 1228 (Fla. 3d DCA 1984). The trustee, while voluntarily disclosing the Cooper letters, specified that this production should not be construed as a waiver of the attorney-client privilege, thereby evincing its intent to otherwise claim the privilege. Cf. Coleman v. Primeau, 698 So.2d 356 (Fla. 4th DCA 1997).
We accordingly quash the appealed order. On remand, the lower court must fashion relief that will minimize prejudice caused by the error in turning the documents over to respondent. If respondent has a viable subject matter waiver argument directed to certain documents, she is not precluded by this opinion from asserting it on remand.
Petition GRANTED, order QUASHED, and REMANDED.
GRIFFIN, C.J., and GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] Petitioner did not seek review prior to the release because the court's action was instantaneous. The court ruled and simultaneously handed the documents to respondents. Even though the documents have been released, we have jurisdiction to remedy the error. Cf. Abamar Housing and Development, Inc. v. Lisa Daly Lady Decor, Inc., 698 So.2d 276 (Fla. 3d DCA), rev. denied, 704 So.2d 520 (Fla.1997).