743 So.2d 41 (1999)
Gary C. COURVILLE, M.D., and William R. Cook, M.D., Petitioners,
v.
PROMEDCO OF SOUTHWEST FLORIDA, INC., Respondent.
District Court of Appeal of Florida, Second District.
July 21, 1999.
Anthony M. Lawhon of Parrish & Moore, Naples, for Petitioners.
Theodore L. Tripp and Bruce M. Essen of Garvin & Tripp, Fort Myers, for Respondent.
PER CURIAM.
Gary C. Courville and William R. Cook (physicians), seek certiorari review of a trial court's order deeming the attorney-client privilege waived as to certain communications, and directing production of these communications in discovery. The trial court's finding of waiver is predicated on an affidavit filed by the physicians' attorney in the case. Certiorari is the appropriate means to seek review of a court order that compels disclosure of information claimed to be protected by attorney-client privilege. See Robichaud v. Kennedy, 711 So.2d 186 (Fla. 2d DCA 1998). Because the trial court's determination of the scope of the waiver is overbroad, the petition for certiorari is granted and the order of the trial court is quashed.
Promedco of Southwest Florida, Inc., is a medical management firm. The physicians were shareholders and employees of Naples Medical Center, P.A., which sold its assets to Promedco, and the physicians were required to execute several documents in connection with the sale.
Promedco filed suit alleging that the physicians were in violation of a non-compete agreement contained in one of the documents related to the sale, a split-dollar agreement. The physicians responded that they had not executed the non-compete agreement alleged by Promedco. Promedco then produced a signed copy of the split-dollar agreement containing the non-compete agreement. The physicians claimed that the documents they had reviewed and intended to sign did not have this agreement, and the attorney who advised them in the transaction, Thomas Clark, filed an affidavit in support of this fraud claim.
*42 The affidavit executed by Clark described the circumstances of his retention by the physicians, i.e., that he was retained to advise them concerning the documents that would be executed for the sale of the medical center. Clark stated that he reviewed the documents, and the split-dollar agreement did not have a noncompete clause.
Clark also described conversations he had with the attorney for the medical center concerning the terms of a separate noncompete clause in an employment agreement. Clark related in the affidavit that the attorney for the medical center advised him that the noncompete clause in the employment agreement would be revised. The medical center sent Clark a copy of the revised employment agreement which had a noncompete clause that would not go in to effect until five years after the agreement was executed, as opposed to the noncompete clause at issue, which went into effect immediately upon closing of the sale.
Clark's affidavit reflected that he never saw a split-dollar agreement with a noncompete clause, and that such a clause would be inconsistent with the revision of the employment agreement. He stated that he advised his clients based on the understanding that they would not be subject to a noncompete clause during the first five years of their employment, and that his clients signed the documents based on this advice.
The trial court granted in part Promedco's motion to compel discovery. In its order, the court found that by filing the affidavit concerning communications which might otherwise be subject to a claim of privilege, the physicians waived the privilege as to attorney-client communications concerning the entire transaction between Promedco, the medical center, and the physicians. The court ordered production of Clark's file concerning the transaction, ordered that Clark submit to a deposition, and ordered other production of privileged information.
The physicians concede that the affidavit filed by Clark waived the attorney-client privilege, but argue that the trial court's finding of the scope of the waiver is overbroad. They contend that the waiver should be limited to advice concerning the absence of a noncompete clause in the split-dollar agreement.[1]
When the attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on the same matter. See First Union Nat'l Bank of Fla. v. Whitener, 715 So.2d 979 (Fla. 5th DCA 1998), review denied, 727 So.2d 915 (Fla.1999); Procacci v. Seitlin, 497 So.2d 969 (Fla. 3d DCA 1986). Clark's affidavit addressed only the noncompete agreement, and did not allude to other aspects of the transaction. The focus of the litigation is the noncompete agreement. Disclosure concerning communications about other aspects of the complex transaction, including the transfer of assets to Promedco, representations and warranties by the parties, disclosures of financial statements, the issue of indemnification, plans for collection of accounts receivable, distribution of management and administrative duties, and assumption of leases would exceed the scope of the waiver.
The order of the trial court is quashed, and this case is remanded to the trial court for entry of an order that delineates the scope of the waiver of the attorney-client privilege in accord with this opinion. In addition, the court should conduct an in camera review of all communications which are identified by the physicians as privileged *43 and outside the scope of the waiver as found by the court on remand. See Old Holdings, Ltd. v. Taplin, Howard, Shaw & Miller, P.A., 584 So.2d 1128 (Fla. 4th DCA 1991).
Certiorari granted; trial court order quashed; and remanded to the trial court for further proceedings.
THREADGILL, A.C.J., and STRINGER and DAVIS, JJ., Concur.
NOTES
[1] The scope of waiver advocated by the physicians is narrower than Clark's disclosure in the affidavit. Clark addressed the issue of a noncompete agreement in both the split-dollar agreement and in the employment agreement. His disclosure concerns his advice and consultation with the physicians about the content of a proposed noncompete agreement, and his observations whether such an agreement was present in the split-dollar agreement.