ERVIN, J.
Michael Moore, Secretary of the Department of Corrections; Kris B. Robinson, Personal Representative of the Estate of Arline Y. Batali, M.D.; Jose Garriga, M.D.; Matthew Jenkins; L.T.D. Robinson; Barbara Thomas, R.N.; and Raymond Waters, R.N. (hereinafter collectively referred to as “DOC”), seek a common-law writ of certiorari to quash an order of the trial court compelling production of a report concerning the death of inmate Rudolph Golson, Jr., son of respondent, Ebony Gol-son. DOC contends that the trial court departed from the essential requirements of law, because the report was protected from discovery by section 766.101, Florida Statutes (2000). We agree and grant the petition.
Respondent sued the petitioners alleging negligence connected with the treatment resulting in the death of inmate Gol-son during a severe asthma attack, and filed a motion to compel DOC to produce an “outside physician review report” that had been prepared pursuant to DOC’s Mortality Review Program. The trial court rejected DOC’s assertion that the document was privileged under section 766.101(5), infra, concluding that the statute protects only peer-review proceedings, and the report regarding Golson’s death was not submitted for peer-review purposes. On the contrary, the evidence in petitioners’ appendix and the applicable statutory authority bar respondent from discovery of this document.
Section 945.6032(1), Florida Statutes (2000), requires DOC to establish a “medical review committee” under section 766.101 for the purpose of providing supervision over DOC’s inmate health-care quality-management - program. Section 766.101(5) provides that the records of *754 medical review committees created in conformity with subsection (l)(a) shall be protected from discovery. Subsection (l)(a) defines ten kinds of medical review committee, including in subsection (l)(a)(l)(e):
A committee of the Department of Corrections or the Correctional Medical Authority as created under s. 945.602, or employees, agents, or consultants of either the department or the authority or both[.]
The final paragraph of subsection (l)(a) provides that the ten enumerated committees must have the following goal in order to enjoy the protections guaranteed by the remainder of the statute:
[T]o evaluate and improve the quality of health care rendered by providers of health service or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area[.]
Section 766.101(5) provides, in pertinent part:
The investigations, proceedings, and records of a committee as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee[J
Health Services Bulletin No. 15.09.09, issued by DOC’s Office of Health Services, sets forth DOC’s “Mortality Review Program,” which is commenced whenever an inmate dies under DOC’s care. The Bulletin details the hierarchy of administrative responsibilities within the program. It begins by stating the following purpose of the program, which demonstrates that the documents generated pursuant to the program meet the criteria for confidentiality articulated in the final paragraph in subsection 766.101(l)(a) quoted above:
I. PURPOSE:
The purpose of the Mortality Review Program is to retrospectively monitor and evaluate the quality and appropriateness of health care and the healthcare delivery process upon inmate death. The goals are to use the findings from case reviews to improve the quality of healthcare services and to provide an avenue for the health-care provider’s professional growth and development.
As part of the Mortality Review Program, the institution where an inmate dies is required to conduct a mortality review and prepare a report, as well as to assemble the inmate’s health-care record. For certain types of death, e.g., from a critical event or medication errors, the Central Office is required to transmit the healthcare record and the death summary to an outside physician reviewer for the purpose of conducting an independent evaluation of the incident. The reviewer is not shown the institution’s mortality review report, and after the physician has submitted his or her report, the Central Office is directed to close the case if no problems are identified. If, however, either the institution or the outside physician reviewer identifies a problem, the Director of Regional Health Care is required to compare the two reports, and in the event a discrepancy is found, or if both reports identify a deficiency, the Director must determine whether and how the problem can be resolved, and must document such resolution on a case closure form. The Director is also instructed to identify cases that are either particularly challenging, or “which present opportunities for education of the practitioners,” for review by peer-review *755 committees at regional and statewide levels.
As the above Bulletin reveals, the purpose of the entire Mortality Review Program, as well as outside physician review reports, is to identify possible deficiencies in the provision of health services to inmate decedents that need to be addressed. Based on our examination of the above authority, we conclude that the outside physician review report is privileged against disclosure under section 766.101(5).
We also reject respondent’s contention that DOC waived its right to assert the privilege once it inadvertently produced a memorandum that was also prepared pursuant to the Mortality Review Program. This one-page memorandum consists of a small chart showing the number of inmate deaths from asthma compared with total inmate deaths and total inmate population between the years 1994 and 2000. The memorandum does not specifically mention the decedent, nor does it disclose anything about the circumstances of his death. Disclosure of this document cannot be construed as a waiver of section 766.101 protection for the outside physician review report which pertains explicitly to Golson’s death. See, e.g., Courville v. Promedco of S.W. Fla., Inc., 743 So.2d 41 (Fla. 2d DCA 1999); First Union Nat’l Bank of Fla. v. Whitener, 715 So.2d 979 (Fla. 5th DCA 1998).
We GRANT the petition for writ of cer-tiorari and quash the order under review.
DAVIS and VAN NORTWICK, JJ., concur.