M. E. ROUNTREE v. R. H. DAVIS, JR., and DAVIS ESTATES, INC.

167 So. 820.
Division B.
Opinion Filed April 30, 1936.
Rehearing Denied May 14, 1936.

John F. Burket, R. E. Kurtz and *Treadwell & Treadwell*, for Appellant;

*Henderson & Franklin, McMullen, McMullen & Pogue* and *Deiches & Bernson* (of New York City) for Appellees.

ELLIS, P. J.—In November, 1933, M. E. Rountree exhibited his bill of complaint in the Circuit Court for Lee County against Davis Estates, Inc., a Florida Corporation, and R. H. Davis, Jr.

The relief sought by the bill is that the Davis Estates, Inc., which holds the legal title to certain land located in Lee County, be, decreed to hold that title in trust for the complainant Rountree and R. H. Davis, Jr., as the sole heirs at law of R. H. Davis, Sr., who died on or about April, 1932. It is also prayed in this connection that the Corporation be required to convey the lands to the rightful owners.

An accounting is also sought of money expended by Rountree in and about the development of the land over and above the amount of money furnished by R. H. Davis, Sr., during his lifetime and the executor of his estate, R. H. Davis, Jr., since the death of the elder Davis. In this connection it is also prayed that the money found to be due to the complainant on the accounting be declared to be a "first lien" upon the interest of R. H. Davis, Jr., "in and to said lands."

The theory of the bill rests upon a joint enterprise entered into between the complainant Rountree and R. H. Davis, Sr., about September, 1925, into which the parties put two tracts of land separate in ownership but contiguous in area. The total acreage of the two tracts was about eighty acres; the lower forty being the SW¼ of the NW¼ of Section 2 in Township 45 S., Range 24 E., was alleged to belong to Rountree, and the upper tract, described by metes and bounds, and a part of the SE¼ of the NE¼ of Section 3 to Davis.

It is alleged that Davis and Rountree were engaged in the real estate business. · The latter bought and· sold the land and found a purchaser for the two tracts. They made a "joint sale" to J. R. Stewart, who as part of the consideration gave his sixteen notes to Rountree and Davis in the sum of $87,750.00, and a mortgage upon the land to secure the payment of the same.

Stewart failed to pay, so in March, 1926, suit was brought by Davis and Rountree to enforce the mortgage lien. There was a final decree of foreclosure, a sale of the property was had in December, 1926, and it was bought by Rountree in the name of the Davis Estates, Inc., for $100,000.00 and deed was executed to the Corporation.

The bill alleges that the Corporation was organized by . Rountree and J. F. Burket and Harold H. Flower; that the two last named indorsed their stock in blank and delivered it to the "remaining stockholder and director," who was Rountree. No sucessors to Burket and Flower were appointed.

The bill alleges in indirect form that "while it was afterwards agreed between the plaintiff and R. H. Davis, Sr., now deceased, that if they failed to sell the said lands mentioned herein, that they would divide the stock of said cor-

poration equally between them," it is is specifically alleged that the agreement was never carried out and no meetings of the directors or stockholders were ever held and no business transacted after Burket and Flower resigned. As Rountree was at that time the only stockholder and director the allegation is somewhat doubtful in meaning.

It is, however, alleged that "failing to make sale of the said property during the so-called Florida Boom," Davis and Rountree in the spring of 1928 determined to develop the said property and they so agreed; Davis to furnish the money necessary, including the "living expenses" of Rountree, who was to superintend the labor. It was agreed, so it is alleged, that the process of development was to continue "until such time as the property would be self-sustaining, and they could sell the same for a profit, and that each of the said parties would own an undivided one-half interest in and to the said property and if and when the said property could be sold for a profit that they would share equally in the proceeds of the sale thereof."

Such was the basis of the joint enterprise. The elements of it, however, are unclear. Was Davis to supply all the money necessary to the development of the property including a "living wage" to Rountree indefinitely until the property could be sold for a profit or become self-sustaining, in which case each was to own an undivided half interest in the land, or was each to share equally in the profits or gross proceeds of the sale of the land?

Whatever the agreement was it was alleged to have been made in the spring of 1928. Rountree superintended the development at a living wage paid by Davis until the latter's death in April, 1932. The executors of Davis, so it is alleged, continued the arrangement until February, 1933, when they notified Rountree that they could not furnish

any more money for the development and maintenance of the orange grove and properties and living expenses for Rountree.

It is alleged that Rountree expended large sums of his own money amounting to more than $9,000.00 in cultivating and maintaining the grove and paying his own living expenses and is "continually having to pay out large sums of money" for such purposes and will be required to continue such expenses "until such time as the prpoerty will become revenue producing." The expense thus incurred by him he claims to be a charge against the interest of R. H. Davis, Jr., as heir to R. H. Davis, Sr.

The alleged expense incurred by Rountree was not required to be made by him if the alleged agreement between him and Davis existed, for according to his interpretation of the agreement Davis was to supply all the money for such expenses and Rountree all the superintending of the properties. It is alleged that the Corporation never owned the property, but held it in trust for Davis and Rountree equally.

The defendants moved to dismiss the bill. That motion, however, seems never to have been ruled upon and the defendants answered in January, 1934. It is denied that Rountree ever owned any part of the lands. It is admitted that the lands were sold to Stewart and the notes were made payable to Rountree and Davis. It is admitted that Stewart failed to pay and that the mortgage was foreclosed and final decree obtained and that the property was sold to Davis Estates, Inc., the existence of which Corporation is admitted. It is denied, however, that there was any agreement between Davis and Rountree that the title was held by the Corporation in trust for them. It is admitted that the parties agreed to develop the lands by planting citrus

and mango trees and that Davis would furnish the money and Rountree should live on the premises and superintend the work for which services Davis would pay. It is admitted that the work was done upon the property, that Davis supplied the money and after his death the executors of his estate continued to do so until February, 1933.

It is also denied that the money supplied was insufficient or that Rountree was compelled to expend his own funds upon the property. All the material allegations of the bill upon which the complainant relied to establish a joint adventure between him and Davis were denied as well as all allegations upon which the complainant relied to establish a trust in the lands for his benefit and that of Davis.

The answer then proceeds to give a different history of the transaction which the complainant contends constituted the basis of the equity upon which he relies.

The substance of the averments is that Rountree in acquiring the title in himself to the "south forty" betrayed a trust that had been reposed in him by Davis and his associates, C. A. Judkins and C. R. Eagle, who supplied the money for the cash payment of ten thousand dollars upon the purchase of that tract; that Rountree, who acted as agent for Davis in the purchase of the upper tract, suggested the purchase of the lower tract so that the two might be sold as a unit to better advantage than the upper tract could be alone. The suggestion was adopted by Davis and his associates and Rountree purchased the land from Franklin Miles Association at the price of $36,000.00, $10,000.00 of which was paid in cash by Davis and his associates. Rountree, who was to have taken the title as trustee for Davis and his associates, took the title in his own name and executed a mortgage upon the land for the balance of $26,-000.00 purchase price. That fraud was not discovered by

Davis and his associates until the institution of the suit by Rountree.

The balance of $26,000.00 was not paid by Rountree, but was assumed by Stewart when he purchased both properties in 1925, paying $50,000.00 cash, assuming the mortgage of $26,000.00 and encumbering the property for the balance of $87,750.00. The notes for that balance represented certain prospective profits in which Rountree was to share after Davis had been reimbursed in full for his investment and interest. So the notes and mortgage were made payable to Davis and Rountree.

The answer avers that Stewart failed to pay. The mortgage was foreclosed, the land sold and was purchased by the Davis Estates Corporation, which was organized by Rountree, Burket and Flower as incorporators for the purpose of taking title to the land. The interests of Davis and Rountree in the notes and mortgage were assigned and transferred to the corporation in exchange for stock therein. The corporation purchased the property subject to the Rountree mortgage for $26,000.00 to Franklin Miles Association, which was subsequently paid by Davis.

It is averred in the answer that as the Stewart transaction resulted in no profit, Rountree was entitled to no remuneration; that subsequently to that transaction Rountree transferred all his interest in the Corporation to Davis, who became the owner of all the stock. According to the averments of the answer that transaction terminated the joint adventure, if in fact one ever existed between Rountree and Davis.

The answer proceeds to aver that after the transaction in which Davis became the sole owner of all the stock the Corporation which then had no funds to pay outstanding liens on the land acquired, Davis advanced the money nec-

essary to discharge the several liens including the Rountree mortgage to Franklin Miles Association for $26,000.00 upon the lower forty acres of which Rountree claimed to be the owner before the sale to Stewart. It is averred that Rountree suggested then that the lands be planted in citrus and mango trees and developed with the idea of selling the lands at a profit. That suggestion required Davis to supply all money necessary including a modest compensation to Rountree who should devote his time to the work of directing the development; that when the fruit trees came under that development into bearing the property would be sold and out of the proceeds Davis should be reimbursed for all money outlays including the purchase price of the lands and interest on the investment; that the remainder should be equally shared between Davis and Rountree. Davis accepted the suggestion and the work began.

It is averred that the work began in May, 1928, and continued until February, 1933, during which time Davis and his executors sent to Rountree for expenses under the arrangement $72,904.39. In addition to that sum Davis expended on account of the purchase price of the lands and extinguishment of liens the sum of $98,137.40 and received $50,000.00 from the sale to Stewart, which left an investment in the property by Davis of $121,041.79. It is averred that the property could not be sold for enough now to reimburse Davis or his estate. It is also averred that Rountree had refused to render any account to Davis for the moneys sent by him for the development of the land or to the latter's estate for moneys lent by the executors for that purpose, and that the defendants are entitled to an accounting therefor. The answer prayed that Davis Estates, Inc., be decreed to be the owner in fee of the property without any interest of Rountree therein.

A replication was interposed to this answer and the case proceeded to the taking of evidence.

In October, 1935, the Chancellor rendered a final decree which was duly entered. It was adjudged and decreed that Rountree was not entitled to the relief prayed in his bill of complaint, that the equities of the case were with the defendants, that the Davis Estates Corporation was the owner in fee of the lands described in the bill without any right of Rountree therein. From that decree the appeal was taken.

The appellant's solicitors in their brief, which in the statement of the first question of law involved does not comply with the requirements of New Rule 20 as amended November 5, 1930, assert, that the purpose of the bill chiefly was the impression of the property described with a trust in Rountree's behalf. The statement then proceeds with the assertion that the testimony offered in that behalf "conclusively established" certain facts set forth in the statement.

The statement of facts said to have been "conclusively established" was not supported by the record according to the Chancellor's finding in which after an examination of the record we fully concur. Aside from the rule that one who asserts the existence of a trust in terms different from those of a written instrument by which it is alleged the trust was created has the burden resting upon him to establish his claim by evidence clear, satisfactory and convincing, see Benbow v. Benbow, 117 Fla. 37, 157 South. Rep. 512, and authorities therein cited, there is almost a complete lack of evidence of the existence of the alleged trust. Certainly the rule which requires this Court to affirm the decree of the Chancellor upon the findings of fact by him even upon conflicting evidence, and there is substantial evidence

to support the findings, requires as affirmance upon this phase of the controversy. It has not been made clearly to appear by the appellant that substantial error was committed by the Chancellor in his conclusions or that the evidence shows them to be erroneous. See Fulton v. Clewiston, Limited, 100 Fla. 257, 129 South. Rep. 773; Boyd v. Gosser, 78 Fla. 64, 82 South. Rep. 758, 6 A. L. R. 500; Sandlin v. Hunter Co., 70 Fla. 514, 70 South. Rep. 553; Edney v. Stinson, 90 Fla. 335, 105 South. Rep. 821; Roland v. Mathews, 98 Fla. 695, 124 South. Rep. 34; Commercial Bank v. First Nat. Bank, 80 Fla. 685, 87 South. Rep. 315; Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762; Smith v. Dowling, 81 Fla. 867, 89 South. Rep. 315; Robinson Point Lbr. Co. v. Johnson, 63 Fla. 562, 58 South. Rep. 841; Hill v. Beacham, 79 Fla. 430, 85 South. Rep. 147; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216, 1 A. L. R. 25; Palm Beach Bank, etc., Co. v. Lainhart, 84 Fla. 662, 95 South. Rep. 122.

Question II, as stated in the brief of appellant, presents no question of law at all as involved in the proceedings except possibly that the court is bound to accept as true the statement of a witness which is uncontradicted. That proposition may be admitted to be sound with some qualifications, as: if it is improbable in itself or obnoxious to some established legal method of testing the truth. Peter v. Wright, 6 Ind. 183; 64 C. J. 354.

This Court in Callaway v. State, 112 Fla. 599, 152 South. Rep. 429, and on rehearing as reported on page 432 of 152 Southern Reporter, stated a corollary of that rule. In discussing the testimony of a witness it was said that the "anomalies, uncertainties, contradictions, and improbabilities which it contains" would "impress one who reads and studies it with its inherent weakness, insincerity, and lack

of conformity to standards of consistency which always mark a truthful narrative."

No such criticism as that could be made of the testimony of Mr. John F. Burket or Judge J. Bowers Campbell, whose testimony the appellant's counsel say was ignored, but their testimony is subject to the criticism that it is without any value in the matter of a definite or clear establishment of the existence of a trust in the lands for the benefit of Rountree and Davis. At the time of the sale of the property to Stewart and the taking of the notes and mortgages to Davis and Rountree to secure the payment of the balance due and the lifting by Stewart of the $26,000.00 mortgage to Franklin Miles Association, which Rountree had executed, Mr. Davis' statement that he considered that he and Rountree each owned practically one-half is entirely consistent with Davis' understanding that he and Rountree would share equally in the profits represented by the Stewart obligation.

But there were no profits. Stewart failed to pay. Failed to take up the Rountree mortgage, all of which Davis paid. A corporation was organized and the Stewart mortgage and notes were transferred to it as the basis for issuing stock. Rountree became a stockholder. The property was sold. The corporation became the purchaser. Rountree transferred his holdings to Davis, who paid all indebtedness upon the land, discharged other obligations on account of the property, all with Rountree's knowledge and consent, who afterwards submitted to Davis the proposition to develop the property upon the terms stated.

The third and fourth statements in the brief of questions of law involved make no pretense of complying with the Rule 20, *supra*. They attempt to present the question of the sufficiency of the evidence. We have examined the record and find no error in the Chancellor's findings. The

proposition that the corporation was not duly organized and ceased functioning when Davis acquired all its stock is immaterial. It is a matter of which Rountree in the circumstances cannot complain, besides that point is not presented in the bill of complaint as a basis for complainant's relief. It is specifically alleged that the Davis Estates, Inc., was and still is a Florida corporation organized by plaintiff herein, he being the President of said Corporation, and J. F. Burket of Sarasota, Florida, "as Secretary of said Corporation."

A complainant is restricted to the allegations of his bill. Jordan v. Baugher, 98 Fla. 438, 124 South. Rep. 32; St. Andrews Bay Land Co. v. Campbell, 5 Fla. 560; Kellogg v. Kellogg, 93 Fla. 261, 111 South. Rep. 637.

The decree of the Chancellor is affirmed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.