723 So.2d 892 (1998)
Jose HANONO and Linda Hanono, his wife, Appellants,
v.
Curtis MURPHY and Kim Murphy, his wife, Appellees.
Curtis Murphy and Kim Murphy, his wife, Appellants/Cross-appellees,
v.
Jose Hanono and Linda Hanono, his wife, Appellees/Cross-appellants.
Nos. 97-2538, 98-677.
District Court of Appeal of Florida, Third District.
December 30, 1998.
Parenti, Falk & Waas and Gail Leverett Parenti, Coral Gables, for Jose Hanono and Linda Hanono.
Merritt & Sikes and Martin E. Leach, Miami, for Curtis Murphy and Kim Murphy.
Before SCHWARTZ, C.J., FLETCHER, J., and MELVIN ORFINGER, Senior Judge.
SCHWARTZ, Chief Judge.
These appeals arise from the claim of a postman named Curtis Murphy that he was attacked by two cocker spaniels while delivering mail near the home of their owners, Jose and Linda Hanono. Although there was no witness to the alleged incident and Murphy refused to be taken to the hospital, he later testified in a deposition in his action against the Hanonos that he had fallen and been seriously and permanently injured as a result. He continued to maintain that position at the trial despite evidence, including videotape surveillance of his activities prior to the deposition, which indicated that he had been untruthful concerning his disability.[1] *893 The trial judge directed a verdict in Murphy's favor on the issue of liabilityleaving the jury to determine the extent of the damages, if any, caused by the incidentand the jury returned a verdict for $400,000. After their post-trial motions were denied, the Hanonos appealed in case no. 97-2538 from the ensuing judgment.
The ordinary course of that appeal and of the case in general was interrupted on November 3, 1997, when Murphy pled and was adjudicated guilty in the criminal division of the circuit court of fourteen counts of perjury committed at the pre-trial deposition.[2] On this ground, the Hanonos, pursuant to our relinquishment of jurisdiction, moved the trial court for relief from the final judgment under Florida Rule of Civil Procedure 1.540(b)(3).[3] The trial judge granted the motion and a new trial, but refused the Hanonos' application to dismiss the case outright because of Murphy's wrongdoing.[4] Murphy appeals and the Hanonos cross-appeal in case number 98-677, from the respectively adverse portions of that order.

I.
Considering the appeals in the order in which they were filed, we first conclude that the trial court erred in instructing the jury that the attack had indeed occurred and that the dog owners were liable for whatever damages it had caused. While it is true that the plaintiff's version of events was not rebutted by direct testimony to the contrary, his testimony in general and in this respect in particular was throughly contradicted and impeached, by prior inconsistencies on material issues and otherwise. The jury was therefore entitled to reject his testimony in its entirety and conclude, contrary to the obviously harmful implied endorsement of his story by the ruling of the trial court, that the alleged attack had never taken place. Rountree v. Davis, 124 Fla. 212, 167 So. 820 (1936); Catlett v. Chestnut, 107 Fla. 498, 146 So. 241 (1933); Evans v. State, 603 So.2d 15, 17 n. 4 (Fla. 5th DCA 1992)("If a witnesses's testimony is impeached with inconsistencies on material issues, as opposed to collateral matters, and thereby the witness's veracity and credibility are placed in question, the trier of fact is entitled to judge the witness's credibility in its entirety and accept or reject the witness's testimony on those and other issues as well."); Roach v. CSX Transp., Inc., 598 So.2d 246 (Fla. 1st DCA 1992); Bellman v. Yarmark Enters., 180 So.2d 663, 664 (Fla. 3d DCA 1965)(within province of fact-finder to find witness who has been impeached *894 "completely unworthy of belief" and reject his testimony), cert. dismissed, 188 So.2d 807 (Fla.1966). Thus, even were there nothing else, the judgment for the plaintiffs could not stand and a new trial would be required.

II.
But, of course, there is a great deal more. We are presented with the extraordinaryindeed, so far as we know, unique case of a party who has actually been convicted of perjury in the prosecution of a civil action and who nevertheless claims the right to continue to maintain it. Cf. Fagan v. Powell, 237 So.2d 579, 582 (Fla. 3d DCA 1970)(rejecting contention "that a judgment should not be vacated because of perjured testimony until the alleged perjurer has been tried and convicted of the crime of perjury"), appeal dismissed, 239 So.2d 826 (Fla.1970). We cannot and therefore will not permit this to occur and accordingly order that the Murphys' action be dismissed with prejudice.
In finding that the plaintiff had been guilty of fraud in securing the original verdict and judgment, the trial court held as follows:
What distinguishes this case from many others where a plaintiff is impeached and the jury is left to resolve the inconsistencies, is that subsequent to the civil jury trial, the plaintiff pled guilty to 14 counts of perjury for having lied at the pre-trial deposition. In other words, by his plea of guilty, the plaintiff admitted that the testimony regarding his severe physical restrictions was false and he did not believe it to be true. This plea of guilty is the basis for the defendant's motion for relief from judgment.
In opposition to the motion to vacate the judgment, the plaintiff maintains that there can be no fraud found here since the plaintiff "corrected" his testimony at trial by admitting his deposition testimony was untrue. The plaintiff argues that the jury therefore, was not misled; it sorted everything out, found for the plaintiff in spite of the impeachment and therefore, the judgment should not be set aside.
The problem with the plaintiff's argument is this: the plaintiff cannot on the one hand admit by his guilty plea that he made statements at deposition which he did not believe to be true and, at the same time, say as he did at trial that the statements were true, under certain circumstances.[5] Therein lies the fraud. The jury *895 was indeed misled by the plaintiff's testimony at trial. An appropriate remedy therefore is to set aside the judgment. See and compare Kashino v. Morell, 449 So.2d 958 (Fla. 4th DCA 1984). (footnotes omitted)
We agree entirely with this position and reject Murphy's contentions to the contrary in case no. 98-677.
It is unnecessary, however, to extend the discussion of the validity of the trial court's grant of a new trial on this ground. This is so both because of our previous ruling that such a trial would be required anyway, and, much more important, because of our conclusion that a new trial will not suffice to remedy the plaintiff's wrong.[6]
Our courts have often recognized and enforced the principle that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends. Carter v. Carter, 88 So.2d 153, 157 (Fla.1956)("It is offensive to our sense of right that a wrongdoer be allowed to exploit his wrongs to the injury of another and to the profit of himself."); Ashwood v. Patterson, 49 So.2d 848, 850 (Fla. 1951)(stating "fundamental equitable principle that `no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime'"); Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998)("[W]here a party lies about matters pertinent to his own claim ... and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper."); Figgie Int'l, Inc. v. Alderman, 698 So.2d 563 (Fla. 3d DCA 1997)(affirming entry of default against party which had destroyed evidence and presented false testimony), review dismissed, 703 So.2d 476 (Fla.1997); Mendez v. Blanco, 665 So.2d 1149 (Fla. 3d DCA 1996)(affirming dismissal of claim where plaintiff repeatedly lied under oath at deposition); O'Vahey v. Miller, 644 So.2d 550, 550 (Fla. 3d DCA 1994)(affirming dismissal of claim based upon established perjury of plaintiff which represented serious misconduct and "an obvious affront to the administration of justice"), review denied, 654 So.2d 919 (Fla.1995); Kornblum v. Schneider, 609 So.2d 138 (Fla. 4th DCA 1992)(trial court has inherent authority to dismiss entire action for fraud which permeates the proceedings); Horjales v. Loeb, 291 So.2d 92, 93 (Fla. 3d DCA 1974)("One who engages in a fraudulent scheme forfeits all right to the prosecution of a lawsuit."); see also Fair v. Tampa Elec. Co., 158 Fla. 15, 27 So.2d 514 (1946); Fagan v. Powell, 237 So.2d at 579. We can think of no situation which more clearly justifies and requires this result.
It is true that these cases are approvals of rulings which, unlike the one below, imposed the ultimate penalty in the exercise of the trial court's discretion. We must conclude, however, that the trial judge abused that discretion in not doing so in the present, extreme set of facts. This was the case in *896 Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), perhaps the most important case in this sensitive area of the law. There, eloquently speaking through Justice Black, the Supreme Court reversed a determination of the Third Circuit Court Of Appeals that a party's fraudulent conduct in securing a prior appellate opinion did not justify setting the decision aside, holding that it had "both the duty and the power" [e.s.] to do so. Hazel-Atlas Glass Co., 322 U.S. at 250-51, 64 S.Ct. at 997. Savino v. Florida Drive In Theatre Management, Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997) similarly states:
We recognized in Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992), that where a party perpetrates a fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper. Appellant lied about matters which went to the heart of his claim on damages. These repeated fabrications undermined the integrity of his entire action. We believe that the trial court has the right and obligation to deter fraudulent claims from proceeding in court. [e.s.]
A proper allegiance to our system of justice and a proper respect for our own role in preserving its sanctity mandate the conclusion that Murphy has forfeited his right to proceed.
Accordingly, the judgment below is reversed and the cause remanded with directions to dismiss it with prejudice.
Reversed, remanded with directions.
NOTES
[1] The trial judge aptly described the pertinent events as follows:

In this lawsuit, the plaintiff claims serious injuries to his back resulted when he fell after being accosted by the defendants' two small dogs. At a pre-trial videotaped deposition, the plaintiff (shown wearing a neck brace and other orthopedic devices) testified that, as a result of his injuries he was severely restricted in his physical activities. He stated, for example, that he was unable to wash his car, bend over, or walk up steps without holding onto a handrail.
Before the deposition was taken, the defendants had placed the plaintiff under surveillance and had captured him on videotape washing his car, bending over, going up steps without holding onto the railing and doing many activities he had testified he was unable to do. Between the taking of the deposition and the trial, the surveillance tapes were disclosed to the plaintiff. At the trial, the plaintiff, knowing exactly what the surveillance tapes revealed, testified first on direct examination, and later on cross-examination, in an attempt to explain away the apparent inconsistencies between the surveillance tape and his deposition testimony.
[2] The perjury counts alleged that Murphy had lied in various respects concerning his injuries. Count five is typical:

that CURTIS MURPHY on or about December 22, 1995, in the County and State aforesaid did unlawfully make a false statement, which said defendant did not believe to be true under oath, in an official proceeding, to wit: a deposition of CURTIS MURPHY in the case of CURTIS MURPHY and KIM MURPHY vs. JOSE HANONO and LINDA HANONO, Case no. 93-09017CA32, in Dade County, Florida, in regard to any material matter, by stating "I can't bend forward. I can't bend backwards. I can't bend to the left side or the right side", in violation of s. 837.02, Fla. Stat.
Murphy was sentenced to two years probation and three months community control.
[3] The motion was filed on December 9, 1997, within one year of the May 16, 1997 judgment. See Fla.R.Civ.P. 1.540(b)(3).
[4] On this point the court ruled:

[T]he issue remains, as to whether the plaintiff's case should be dismissed as the defendants request or a new trial should be ordered. Although there is support for the outright dismissal of the case when the plaintiff lies about matters which go "to the heart of his claim on damages" (see Savino v. Florida Drive In Theatre Management, Inc., 697 So.2d 1011 (4th DCA 1997)), the Court will take the position more consistent with preserving the important right to trial by jury, and grant a new trial. Gaiter v. Winn Dixie Stores, Inc., 376 So.2d 912 (Fla.App.3d DCA 1979).
[5] The following excerpts of Murphy's "explanations" at trial give the flavor of his responses:

Q. So, you didn't tell the truth about how you get in and out of the car, did you sir?
A. I told the truth, sir, like I'm explaining to you now the way that I got in the car and the way that I explained to you it happened. It happened without the TENS unit. Okay, when I had the TENS unit on, I could get in the car like a regular, normal person. When I did not have on the TENS unit, I cannot get in the car like a normal, regular person.
Q. Now, let me ask you this: Do you recall at the same deposition when you were asked if you could bend over and pick something off the table?
Do you remember that question?
A. Yes.
Q. What was your answer?
A. I don't remember the answer.
Q. Your answer was, no, you couldn't do it. Is that true?
* * *
Q. Is it true you can't bend over and pick something up off the table?
A. There's days that I can and there's days that I can't.
Q. Well, let me very briefly, on page 50
* * *
Q. "Can you stand up straight"
* * *
Q. "at the waist and pick up something off the table?"
A. "No, I can't. No." Do you remember that answer?
A. No, I don't remember that.
* * *
Q. So, that's what you told me on December 12th, isn't it, sir?
A. Yes.
Q. That's not true, is it, sir?
A. It's true to the effect that I could do it with the TENS unit. Without the TENS unit, I cannot do it.
* * *
Q. When I asked you did you ever wash your car in the last year or so, what was your answer?
* * *
A. It was no.
* * *
Q. That's not true, is it?
A. No, its not true. The reason being
Q. Okay, go ahead. Give us the reason.
A. That I washed the car out of frustration and doing this, it was on a day that I felt good, I had taken medication and there was times that I took more medication than I normally would take. I would have on my TENS unit, I would have on my corset underneath my shorts, pants or whatever I had on and I'm going to be able to go out and do this. But, I paid for it in the long run.
* * *
A. In doing this wash the car, maybe within a period of six months or sixa period of six years, I did it maybe four or five times, so I considered myself, when I answered that question, to be, no, I did not wash the car.
* * *
"Let's say, in the last month, have you been able to pick up your daughter or any little, smaller child?"
Your answer: "No."
"Question: When I say pick up, I mean carry."
Your answer: "I understand. The answer is no."
Do you remember those questions and those answers?
A. Yes, I remember those.
Q. That's not true, is it?
A. It's not true to the fact that when you said my child. I do not carry my child. Okay, with thewith another kid, a little kid, I was under the assumption that you meant my grandchild.
[6] Indeed, as would have been evident if we had reversed the order of our discussion of the issues in the two appeals, it may well be that this conclusion renders our previous holdings unnecessary and thus dicta.