760 So.2d 228 (2000)
Jose Moreno CABRERIZO, Appellant,
v.
FORTUNE INTERNATIONAL REALTY, Appellee.
No. 3D99-1742.
District Court of Appeal of Florida, Third District.
May 17, 2000.
Rehearing Denied June 21, 2000.
*229 Sheldon R. Rosenthal, Miami, for appellant.
Jones & Adams; Barranco, Kircher, Vogelsang & Boldt and Kimberly Boldt, Miami, for appellee.
Before JORGENSON, GODERICH, and RAMIREZ, JJ.
RAMIREZ, J.
Appellant, Jose Moreno Cabrerizo, appeals an adverse summary final judgment. We affirm.
On March 3, 1997, Cabrerizo and Appellee Fortune International Realty [Fortune] entered into a written exclusive Real Estate Listing Agreement [Agreement] for the sale of Cabrerizo's home. The Agreement was prepared by Fortune and provided that Fortune would be the exclusive agent for a period of six months, from March 3, 1997 to September 3, 1997. The Agreement included a clause which permitted Cabrerizo to cancel the Agreement prior to the expiration of the six-month listing period upon payment of a cancellation fee of $500.00 and written notice to Fortune. The Agreement also set the initial sale listing price of Cabrerizo's home at $840,000.00. If Fortune sold the home, it was to be paid a commission of 10%.
On May 16, 1997, Cabrerizo canceled the Agreement in writing. He paid Fortune $500.00 on May 29, 1997. Cabrerizo entered into a sales contract with Hector and Elizabeth Hurtado [Hurtados] on May 20, 1997. The contract showed a sales price of $140,000.00, but there was also a subsequent undisclosed cash payment of $560,000.00, for a total sale price of $700,000.00. The Hurtados gave Cabrerizo a worthless check in payment of the $560,000.00,[1] and Cabrerizo sued the Hurtados for breach of contract. Four months later, Fortune sued Cabrerizo for breach of contract, seeking payment of its commission on the sale to the Hurtados because it contended that its listing agreement was still in effect when the Cabrerizo/Hurtado contract was entered.
In the Fortune litigation, Cabrerizo swore that the true sale price to the Hurtados was $140,000.00. In the Hurtado litigation, on the other hand, Cabrerizo swore that the sale price was for $700,000.00. Forearmed with Cabrerizo's testimony in the Hurtado litigation, Fortune moved for summary final judgment. In response to Fortune's motion for summary final judgment, Cabrerizo filed an affidavit in which he made factual statements that contradicted the sworn statements he made in the Hurtado case.[2] For example, in the Hurtado litigation, Cabrerizo swore that he first heard that the Hurtados were interested buyers on May 14, 1997 and that he first met with them on May 15, 1997. However, in the Fortune litigation, Cabrerizo swore that he could not recall the specific dates in which he spoke to the Hurtados, but believed the communication occurred subsequent to the cancellation of his listing agreement. The trial court granted Fortune's motion for summary final judgment against Cabrerizo, awarding Fortune damages in the amount of $70,000.00, based upon 10% of the purchase price of $700,000.00.
An equitable principle widely upheld is that "no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime." Ashwood v. Patterson, 49 So.2d 848, 850 (Fla.1951). Furthermore, this Court has recognized the principle "that *230 a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve [their] ends." Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998) (citing Carter v. Carter, 88 So.2d 153, 157 (Fla. 1956)("[i]t is offensive to our sense of right that a wrongdoer be allowed to exploit his wrongs to the injury of another and to the profit of himself.")); see, e.g., Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998)("[w]here a party lies about matters pertinent to his own claim, or a portion of it, and perpetrates a fraud that permeates the entire proceeding, dismissal of the whole case is proper."); Figgie Int'l, Inc. v. Alderman, 698 So.2d 563 (Fla. 3d DCA 1997)(affirming entry of default against party which had destroyed evidence and presented false testimony); Mendez v. Blanco, 665 So.2d 1149 (Fla. 3d DCA 1996)(affirming dismissal of claim where plaintiff repeatedly lied under oath at deposition); O'Vahey v. Miller, 644 So.2d 550, 551 (Fla. 3d DCA 1994)(affirming dismissal of claim based upon established perjury of plaintiff which represented serious misconduct and "an obvious affront to the administration of justice"); Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992)(trial court has inherent authority to dismiss entire action for fraud which permeates the proceedings); Horjales v. Loeb, 291 So.2d 92, 93 (Fla. 3d DCA 1974)("[o]ne who engages in a fraudulent scheme forfeits all right to the prosecution of a lawsuit.").
In this case, Cabrerizo has mindfully undermined the integrity of the courts by creating a mockery of the principles of justice through his deceitful misconduct. Such underhanded tactics in full derogation of our legal processes should be met with swift measures. Total expulsion from the category of persons who may avail themselves of the benefits of our court system should not be an afterthought, but should instead be the direct result of such egregious misconduct. We find no merit in the other issues raised by Cabrerizo and, for the foregoing reasons, affirm the final summary judgment entered in this case.
Affirmed.
NOTES
[1] "So it ever is, whether thus typified or no, that an evil deed invests itself with the character of doom." NATHANIEL HAWTHORNE, THE SCARLET LETTER (1850).
[2] Cabrerizo has also contradicted himself in the Fortune litigation. For example, in his affidavit, Cabrerizo states that he canceled the listing agreement orally prior to May 16, 1997, but he also swore that he gave both oral and written notice of cancellation on May 16, 1997.