802 So.2d 337 (2001)
LEO'S GULF LIQUORS, Appellant,
v.
Chandresh LAKHANI; Bhairavi Lakhani; Chan Expands, Inc.; Stuart M. Rotman, C.P.A.; Stuart M. Rotman, C.P.A., P.A.; Sy Chadroff, Esq. and Sy Chadroff, P.A., Appellees.
No. 3D00-130.
District Court of Appeal of Florida, Third District.
September 5, 2001.
Certification Denied November 7, 2001.
Greenberg Traurig and Elliot B. Kula and Arthur J. England, Jr., Miami, for appellant.
Kaye, Ross and Timothy W. Ross, Miami; Lauri Waldman Ross, Miami; Wetherington, Klein & Hubbart and Phillip Hubbart, Miami; Fromberg, Perlow & Kornik, and Malcolm H. Fromberg, Aventura, for appellees.
Before GODERICH and SORONDO, JJ., and NESBITT, Senior Judge.
SORONDO, J.
Leo's Gulf Liquors, Inc. (plaintiff), appeals from the lower court's order granting all of defendants' motions to dismiss its complaint for "fraud on the court."
Plaintiff is a corporation that purchased a liquor store from seller, Chan Expands, Inc. Plaintiff has two officers and directors: Arturo Munder, its president, and Roy Lustig, fifty percent owner of the company and Munder's attorney. It initiated an action against Chan Expands and its owner, Chandresh "Chan" Lakhani, and Bhairavi Lakhani, his wife, as well as their accountant, Stuart Rotman, C.P.A. and Stuart Rotman, C.P.A., P.A. and their attorney, Sy Chadroff, and Sy Chadroff, P.A. for fraud in the inducement of the sale of the store and intentional and/or negligent misrepresentations as to the business and the value of its inventory. Plaintiff alleged that it purchased the store based on representations made by each of the defendants that the store grossed in excess of $2,000,000.00 annually. Additionally, plaintiff alleged that the sellers overstated the value of the inventory of the store by altering prices just prior to the sale and *338 including items in the inventory that were unmarketable.
Defendants answered by denying the claims, and, as pertinent to our discussion, asserted an affirmative defense that the claimed damages were due to the fiscal mismanagement of the store by Munder, its manager after the sale, and not to any alleged misrepresentations by them. They further counterclaimed to collect on an unpaid promissory note for the balance of the purchase price.
Protracted discovery took place over approximately three years. The trial court ultimately had to appoint a special master to monitor the discovery. At their depositions, Munder and Lustig asserted that Chadroff represented both the seller and their company during the sale. They also testified concerning Munder's sales tax problems with the State of Florida, Department of Revenue (DOR), in connection with numerous liquor stores he ran prior to the sale at issue.
Defendants moved to dismiss the case on the basis that the plaintiff's principals committed fraud on the court. In a lengthy order, the trial court granted the motion. Plaintiff appeals.
The parties agree that the dismissal of a lawsuit for perpetrating a fraud on the court is reviewed under an abuse of discretion standard. See Mercer v. Raine, 443 So.2d 944 (Fla.1983); Hanono v. Murphy, 723 So.2d 892 (Fla. 3d DCA 1998); Savino v. Florida Drive In Theatre Mgmt., Inc., 697 So.2d 1011 (Fla. 4th DCA 1997). Accordingly, we are guided by the Florida Supreme Court's directions in Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980):
In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
The trial judge entered an eleven page "Order Granting All Defendants' Motion to Dismiss Plaintiff's Complaint for `Fraud on the Court,'" wherein he made extensive factual findings. These findings focus on two aspects of Munder and Lustig's claims that were untruthful or dishonest. We address each in turn.

I.
Plaintiff's initial complaint was filed on October 21, 1996, and presented claims against Chandresh Lakhani, Bhairavi Lakhani, Chan Expands, Inc., Stuart M. Rotman, C.P.A. and Stuart M. Rotman, C.P.A., P.A. Count 1 set forth a claim for "Fraud in the Inducement as to Business (Intentional Misrepresentation)"; count 2"Negligent Misrepresentation as to Business"; count 3"Fraud in the Inducement as to Inventory"; and count 4 "Action for Civil Theft." The complaint contained no claims against Sy Chadroff or his professional association, nor did it mention Chadroff in any way.
On April 3, 1997, plaintiff filed an amended complaint that included Sy Chadroff and Sy Chadroff, P.A. as defendants. Within the section entitled "Factual Allegations," the complaint alleges that "[d]efendants SY CHADROFF, ESQ., and SY CHADROFF, P.A. at all times material were counsel for Defendants CHAN EXPANDS, CHANDRESH LAKHANI, and BHAIRAVI LAKHANI."
*339 In response to Chadroff's successful motion to dismiss the negligent misrepresentation claim contained within count 2 of the amended complaint based on a lack of privity, plaintiff filed its second amended complaint on September 29, 1997. Within the section entitled, "Factual Allegations," plaintiff now alleged that "[d]efendants SY CHADROFF, ESQ., and SY CHADROFF, P.A. at all times material were counsel for Defendants CHAN EXPANDS, CHANDRESH LAKHANI, and BHAIRAVI, and also acted as counsel for Plaintiff at all times relevant hereto." (Emphasis added).
The trial court noted in its order of dismissal that extensive pre-suit correspondence established beyond question that Chadroff was representing Chan Expands and the Lakhanis, and that Lustig was representing Munder. In fact, in a letter addressed to Chadroff and dated June 12, 1996, Lustig makes reference to "my client" when referring to Munder. The letter threatens suit if the liquor store in question is not sold to Munder. Specifically, the letter states,
Chan Expands', Inc. failure to close under its agreement with my client shall force me to take whatever legal action that may be necessary in order to protect my client's interest in this matter, including but not limited to actions against both the interfering third parties and Chan Expands, Inc.
(Emphasis added). Lustig speaks of his client (Munder) and is clearly using a tone commonly directed at an adversary.
There was additional correspondence exchanged after the sale. On July 1, 1996, Lustig again wrote to Chadroff:

Your client's intentional misrepresentations was fraud in the inducement and at the very least both a civil and criminal violation. It is imperative that a resolution to this matter is reached this week because I have not [sic] intention to idly sit back and allow the Chans and their accountant to have perpetrated this fraud upon Arturo and I. Additionally, at the same time, we might as well address the issue of your client's inflation of the retail price as set forth in my letter of June 13, 1996.
(Emphasis added). Finally, on July 25, 1996, there is yet another letter from Lustig to Chadroff. The letter reads as follows:
Re: Settlement Negotiations
Leo's Gulf Liquors, Inc. purchase of Leo Gulf Liquors from Chan Expands, Inc.
Dear Tim and Sy:
Enclosed please find a preliminary draft of the proposed Complaint in the above referenced matter.
As previously discussed, I believe it would behoove your clients to consider my last offer of settlement prior to filing of a complaint. The ramifications, both civil and criminal, against your clients are enormous. An amicable settlement at this time with mutual releases is appropriate.
Please feel free to contact me in order to further discuss this matter.
(Emphasis added). These letters directly contradict plaintiff's claim in the second amended complaint that Chadroff represented them at all times relevant to the sale of the business in question. The letters further contradict the sworn deposition testimony of both Munder and Lustig, who testified that Chadroff was representing them in the transaction. Munder testified as follows:
A. When I learned that the store was for sale, I called Sy and from that day on Sy has been involved.

*340 In my mind he was the one who gave me this information and he was my attorney as well from day one. To me its natural.
Q. From day one he was the attorney for both sides?
A. I don't know if both attorneys. My attorneys.
That's the way I saw him. As representing me and taking care of me.
Munder further testified in deposition that he only used Lustig for legal representation in real estate matters, and that he could not remember ever using him for anything else.[1]
Lustig testified as follows during his deposition:
Q. Okay. Mr. Lustig, just so I understand it, when the contract was signed on June 19, 1996, in final form, is it your understanding that Sy Chadroff was both the attorney for the buyer and the attorney for the seller?
A. Absolutely; because I discussed it with Sy. I discussed it with Sy initially when thethe initial contract that he prepared came over with my name on it, that he knew that, in fact, I knew nothing about liquor law, knew nothing about what I was getting involved in on that end, and he was going to protect us and our side, as well as that we knew that he was doing transactions for Chan, as well.
Lustig's correspondence immediately before and after the June 19th closing date refutes his sworn testimony. The trial court concluded that both Munder and Lustig lied under oath at their respective depositions on the subject of who Chadroff represented in the sale of the liquor store.

II.
In response to the complaint and amended complaints filed by plaintiff, all defendants raised affirmative defenses. As pertinent to this discussion, defendants all claimed that the damages suffered by plaintiff, if any, were incurred as a result of Munder's negligence and mismanagement. Defendants pursued discovery in this regard by asking both Munder and Lustig whether other corporations owned and/or managed by Munder had suffered sales tax problems. At his deposition, Munder answered defendants' questions as follows:
Q. Have you ever had any problems with the State of Florida Department of Revenue?
A. No.
Q. Has the State of Florida ever asked you to pay more sales taxes than you had originally indicated were owing?
A. No, sir.
Q. Now, all those questions have been with respect to you individually, correct
Let me ask you this: Have you understood my questions as asking about your sales tax involvement on an individual basis?
A. On an individual basis and also manager of the liquor stores.
Q. Have any of the liquor stores of which you've been associated ever had to pay more sales taxes than they originally reported an obligation for?
A. I've already answered it, but I will be glad to answer it again. The answer is no.
Lustig was also questioned on the sales tax history of Munder's corporations.
Q. Now prior to the date of the purchase of this liquor store, are you aware of any tax problems that Mr. Munder had for understating the amount of his gross sales in liquor stores?
A. That would be privileged.

*341 Q. Well
(Chadroff's counsel): Not if there was a prosecution.
A. It's privileged.
(Plaintiffs counsel): If you were defending him.
A. If there were such a thing it would be privileged.
Judge Turner (Special Master): It wouldn't be privileged unless it came from the client. I mean if you knew from public records or something of that nature.
A. I don't know from public records.
Later in the deposition, defendants returned to the same subject and further inquired:
Q. Do you know, in fact, whether Mr. Munder has had problems, again, had fallen into trouble with the beverage authorities for the understatement of his own liquor taxes?
A. It would be privileged. My knowledge would be privileged.
Judge Turner: Any knowledge that came from your client would be privileged. As I said before, if its something that you gleaned from public records
A. I have no knowledge from public records.
The trial court found that the answers given by both Munder and Lustig were untruthful. Defendants established that Munder's corporations had extensive problems with the Florida Department of Revenue over the payment (or under payment) of sales taxes. Having reviewed all of the evidence presented on this issue, the trial court concluded as follows:
The dearth of records and other information received from Plaintiff in discovery sent the defendants next to the State of Florida, Department of Revenue, where after much effort and expense, the Defendant's received certified copies of the public records which revealed that:
(1) 14 Checkers corporations supervised by Arturo Munder had prior sales tax problems with the State of Florida, Department of Revenue; (Checkers Liquors II, III, VIII, IX, X, XI, XII, XIII, XVII, XVIII, XIX, XX, XXI, & XXII, Inc.)(Lustig letter June 19, 1995);
(2) Attorney Roy Lustig not only knew about these sales tax problems between Munders' corporations and the Department of Revenue, but he dealt directly with the Department in writing to resolve his client's problems (same);
(3) Roy Lustig knew of these sales tax problems at the time of his 1997 and 1998 depositions, because he was the attorney who resolved themhe signed two (2) stipulations amending final orders which appear in the public records;
(4) The license revocations were a matter of public record, and were well known to Lustig at the time he testified since he signed the stipulations to reinstate those licenses in return for his client's agreement to pay the Department of Revenue in excess of $200,000. in sales tax (Stipulations amending final orders);
(5) Arturo Munder had the foregoing problems with the Department of Revenue; (Dept. of Revenue letter 6/19/95; Lustig letter 6/29/95);
(6) These problems were well known to Munder at the time he testified, since all of these corporations were owned by his wife, and he admittedly supervised every liquor store that his wife owned (A. Munder p. 162); and

*342 (7) Roy Lustig's representation of Arturo Munder was not limited to real estate, but included the resolution of Munder's sales tax problems in the liquor business.
(8) Lustig's representation of Munder against the Department of Revenue was known to both Lustig and Munder at the time they testified in their depositions to the contrary (same).
Based upon these findings,[2] the trial court concluded as follows:
In the instant case, the plaintiff is a corporation which can act only through its officers and agents. The record reveals that the corporation's President Arturo Munder and its director Roy Lustig engaged in a pattern of purposeful evasion and obfuscation of facts relevant to both the plaintiff's claims and the defendants' defenses. This pattern includes Lustig's testimony that he did not represent the Munder companies with respect to liquor (offered to support the plaintiff's claim that Chadroff was plaintiff's attorney in this transaction) in spite of three letters authored and signed by Lustig in which he claims the buyer as "his client" and the seller as "your (Sy's) client" seven times. Lustig also testified that he knew nothing of these companies' sales tax problems, when in fact he was a signatory who resolved those problems as revealed by the public records.
Mr. Munder's deposition testimony that he had "no problems" with the Department of Revenue was similarly and demonstrably false. Plaintiffs evasions, obfuscation and lies, through their (sic) officers and agents, required the defendants to engage in needless, expensive discovery, to discover the truth, all of which could have been obviated by honest, straightforward answers.

ANALYSIS
In Metropolitan Dade County v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999), this Court restated the well-settled principle "that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998) (citing Carter v. Carter, 88 So.2d 153, 157 (Fla.1956); Ashwood v. Patterson, 49 So.2d 848, 850 (Fla.1951); Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998); Figgie Int'l, Inc. v. Alderman, 698 So.2d 563, 567 (Fla. 3d DCA 1997), review dismissed, 703 So.2d 476 (Fla.1997); Mendez v. Blanco, 665 So.2d 1149 (Fla. 3d DCA 1996); O'Vahey v. Miller, 644 So.2d 550, 551 (Fla. 3d DCA 1994), review denied, 654 So.2d 919 (Fla. 1995); Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992); Horjales v. Loeb, 291 So.2d 92, 93 (Fla. 3d DCA 1974); *343 Fagan v. Powell, 237 So.2d 579 (Fla. 3d DCA 1970); Fair v. Tampa Elec. Co., 158 Fla. 15, 27 So.2d 514, 516 (1946)). We conclude that the trial judge's thoughtful and complete analysis of the facts presented in support of defendants' motion to dismiss for fraud upon the court is amply supported by the record and does not constitute an abuse of discretion. The conclusion is inescapable that both Munder and Lustig, agents of the corporate plaintiff, repeatedly lied under oath concerning issues material to the prosecution of plaintiff's claim and defendants' affirmative defenses, in an effort to conceal the truth and have consequently forfeited plaintiff's right to proceed with this action.
Plaintiff argues that Messrs. Munder and Lustig were not untruthful during their depositions. Rather, the argument goes, they were responding narrowly to inartfully crafted questions.[3] Plaintiff refers us to trial manuals that teach lawyers to instruct deponents to provide abbreviated responses and not to volunteer any information beyond what is specifically requested. We stand firm upon our precedent, which categorically rejects this type of gamesmanship during pretrial or trial proceedings when such tactics ultimately serve to subvert the truth. Witnesses who give sworn testimony by way of interrogatories, at depositions, pretrial hearings and trial, swear or affirm to tell the truth, the whole truth, and nothing but the truth. We expect and will settle for nothing less. Lawyers who advise their clients and/or witnesses to mince words, hold back on necessary clarifications, or otherwise obstruct the truth-finding process, do so at their own, and their clients' peril.
We reject plaintiff's suggestion (implicit in its argument) that a witness's oath is somehow less demanding during depositions. The overwhelming number of law suits filed in Florida are resolved by way of settlement. Cases are regularly settled on the basis of the discovery taken during pretrial preparation. Accordingly, sworn answers to interrogatories and at depositions are extremely important to a lawsuit, since the likelihood of any given case actually going to trial is remote.
We affirm the trial court's order dismissing this action with prejudice upon a showing that all defendants have demonstrated clearly and convincingly that the deposition testimony of Messrs. Munder and Lustig "set in motion [an] unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate" this law suit. Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998).[4]
Affirmed.
NOTES
[1] These statements were also subsequently established to be false.
[2] The record further shows that the Florida Department of Revenue issued tax warrants against Checkers Liquors III and VIII, Munder-owned corporations, in the amounts of $26,668.13 and $98,240.80, respectively, for back sales taxes owed by the stores, plus interest and penalties. In May of 1995, the Division of Alcoholic Beverages and Tobacco (Division) filed administrative complaints against these two corporations and ultimately revoked their liquor licenses without prejudice to apply for new licenses upon payment of the taxes owed.

In February of 1996, the Division and Munder's two corporations entered into two stipulations (public records) amending the final orders of revocation to include an agreement that the corporations would pay $50,000.00 per month until the amount owed was satisfied.
The stipulations described above, as well as an agreement to resolve the tax debt of the many corporations identified in the trial court's order, were signed and negotiated by Lustig as counsel for the Munder-owned corporations.
[3] For example, plaintiff argues that "Munder was first asked whether he had any problems with the Department of Revenue." (Emphasis added). Because Munder had never had any personal tax problems his response, "no," was truthful. When defense counsel subsequently asked him whether he understood the question to be asking about personal tax matters, he said he did, but volunteered that he also understood the questions to ask about his involvement as "manager of the liquor stores." Plaintiff insists this was a truthful answer because Munder was not "manager" of Checkers Liquors III. (There were other corporations involved).

As concerns defense counsel's question referencing "problems with the Department of Revenue," plaintiff maintains that Munder's answer was correct because the tax problems were with the Division of Alcoholic Beverages and Tobacco (the enforcement arm of the DOR in this area) and not the DOR. (The tax warrants were issued by the DOR and the final settlement was also negotiated with the DOR).
Finally, plaintiff posits that neither Munder nor Lustig lied when they testified that there had never been an "understatement" of taxes, because the problem was one of "non-payment" of taxes. (Defendants state in their briefs that this distinction cannot be gleaned from the documents obtained from the DOR).
[4] Canon 3 D(2) of the Code of Judicial Conduct reads as follows: "A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action." Based on our review of this record, we believe that there is substantial likelihood that Roy Lustig has violated those rules and therefore we refer him to The Florida Bar for a determination as to whether he should be professionally disciplined for his behavior in this case.

We further refer this case to the State Attorney for the Eleventh Judicial Circuit of Florida for a determination of whether charges of perjury should be brought against both Arturo Munder and Roy Lustig.