ROTHENBERG, J.
This appeal filed by the plaintiffs, Alex Bistricer, as limited partner of Gulf Island Resort, L.P. (“Bistricer”), and Gulf Island Resort, L.P. (“GIRL”) (collectively, “the Plaintiffs”), stems from an order granting a Motion for Contempt and Sanctions (“Contempt Order”) filed by the defendants, Oceanside Acquisitions, LLC (“Oceanside”) and DBKN Gulf Incorporated (“DBKN”) (collectively, “the Defendants”). The Contempt Order strikes with prejudice the Plaintiffs’ claims to quiet title to real property as a sanction for failing to comply with previously entered discovery orders and for presenting the false testimony of the Plaintiffs and their representatives. The Contempt Order was entered by Pasco Circuit Court Judge Wayne L. Cobb, Bistricer v. Coastal Real Estate Assocs., Inc., 2006 WL 3258226 (Fla.Cir.Ct. Aug. 30, 2006), and Judge Cobb then entered a partial judgment quieting title in favor of the Defendants. Thereafter, the Pasco Circuit Court action was transferred to Miami-Dade Circuit Court, and Judge Thomas S. Wilson, Jr. entered final summary judgment in favor of Oceanside, DBKN, and Steven Carlyle Cronig (“Cro-nig”), as to the remaining counts.
The primary issue before this Court is whether Judge Cobb abused his discretion by entering the Contempt Order, and thereafter, entering a partial judgment quieting title in favor of the Defendants. As Judge Cobb’s Contempt Order documents the ongoing and egregious discovery violations and the false testimony presented by the Plaintiffs and their representatives, and because, under the circumstances, the imposition of the most severe sanction — striking pleadings — was a proper sanction, we conclude that he did not abuse his discretion.
Judge Cobb’s Contempt Order contains the following findings of fact, which accurately reflect the record before this Court. In March 2003, the Plaintiffs filed an action against the Defendants, seeking, in part, to quiet title to condominium units and undeveloped land. On September 18, 2003, the Defendants served an amended notice of subpoena duces tecum (“Amended Notice”) on Candy Smith (“Smith”), a third-party defendant and the records custodian for GIRL and its general partner, Gulf Island Resort, Inc. (“GIRI”). The Amended Notice requested, in part, that Smith appear at a deposition scheduled for September 30, 2003, and produce all documents relating to work performed on behalf of or at direction of GIRL, GIRI, or GIRI’s shareholders — Bistricer, Eisi Markovitz, and Robert Fireworker. In re *217 sponse, Smith, who was represented by R. Nathan Hightower (“Hightower”), the same counsel representing Bistricer and GIRL, filed a protective order. At a hearing held on September 29, 2008, Pasco Circuit Court Judge Lynn Tepper overruled Smith’s objections to the Amended Notice, and ordered Smith to appear at the scheduled deposition and to produce all documents created after February 10, 1993, that are responsive to the Amended Notice. . Thereafter, on February 5, 2004, Judge Tepper entered a written order memorializing her oral ruling (“Judge Tep-per’s Order”). As ordered, Smith appeared at the deposition, and thereafter, Smith’s counsel, Hightower, and the Defendants’ counsel, Scott McLaren (“McLaren”), arranged to have the documents copied and delivered to McLaren.
Bistricer was then served with a request for production, seeking any documents relating to action he took on behalf of GIRI or GIRL. At a deposition, Bistri-cer represented that he instructed GIRL’s records custodian, Smith, to provide all the requested documents. Thereafter, McLaren and Hightower exchanged letters in which McLaren claimed that Smith and Bistricer had not produced all documents required by Judge Tepper’s Order, and Hightower asserted that he believed that the documents had been produced. Believing that Smith and Bistricer had not fully complied with the prior discovery order, the Defendants filed a Motion for Contempt, for Sanctions, and to Compel Discovery. At a hearing held on May 20, 2004, Hightower acknowledged that documents pertaining to “one account” had not been produced, and thereafter, on May 28, 2004, the trial court entered an order compelling the Plaintiffs to produce those documents, but -withholding ruling on the Defendants’ motions for sanctions and contempt. Once again, in June 2004, McLaren and Hightower exchanged correT spondence, with McLaren accusing the Plaintiffs of not fully complying with previous discovery orders, and the Plaintiffs assuring the Defendants that all documents had been produced.
At a deposition held on December 13, 2005, Bistricer represented to Defendants’ counsel, McLaren, that, except for telephone bills, all documents responsive to the request for production had been produced by Smith:
My understanding the last time we visited this issue is that you requested and received 17 boxes, effectively 'every piece of paper that [GIRL] had in its possession and Candy Smith was the custodian of all the records that I think-I recall she told me and I can testify that she gave you every document that she had.
(Emphasis added).
On May 30, 2006, a- non-jury trial, which was scheduled for several days over a period of months, commenced before Judge Cobb. Bistricer testified as to eight relevant real estate transactions, explaining that certain documents were executed that support his position. During cross-examination conducted on June 6, 2006, Bistricer acknowledged that documents for three of the eight transactions were never located during discovery. Several days later, the Plaintiffs’ counsel informed the Defendants’ counsel that the missing documents from the three real estate transactions had been located.
When trial commenced in mid-June, the Plaintiffs’ counsel attempted to introduce the documents into evidence. Following the Defendants’ objection, Hightower testified as to the circumstances surrounding the discovery of these documents. High-tower explained that the documents relating to one transaction were obtained from an attorney involved in that transaction, *218 and the documents from the other two transactions were located in a filing cabinet and a briefcase located at GIRL’s office. Thereafter, Judge Cobb ordered the Plaintiffs to allow the Defendants to review any documents at GIRL’s office that had not been previously produced and were responsive to prior discovery requests and orders. Although Bistricer had previously testified that Smith had given the Defendants “every document that she had,” the Plaintiffs produced an additional forty-six boxes, containing over 68,000 documents.
Several of these documents were generated prior to Smith’s September 30, 2008, deposition; had not been previously produced by either Smith or Bistricer; and were responsive to the prior discovery requests and orders of the trial court. More importantly, the boxes contained documents relevant to the issues and/or affirmative defenses raised in the parties’ pleadings, and thérefore would have been addressed during the pre-trial depositions and the cross-examination of the Plaintiffs’ key witness, Bistricer, during trial. Further, these documents were inconsistent with (1) Bistricer’s affidavit denying knowledge 'of a relevant transaction/document; (2) Bistricer’s deposition testimony; (3) Bistricer’s trial testimony; (4) Fire-worker’s deposition testimony; and (5) Smith’s deposition testimony.
Iri the Contempt Order, Judge Cobb rejected the Plaintiffs’ argument that Bis-tricer, Smith, and Fireworker were “merely mistaken” when they testified that all documents had been produced, and instead, found that “this is not a reasonable explanation for the false testimony given by all three representatives of Plaintiff GIRL on this important issue.” Judge Cobb also found that “the collective effect of the false testimony provided by Plaintiffs and their representatives constitutes a fraud upon the Court resulting in the loss of evidence to the Defense,” and that the “Defendants were effectively denied the opportunity to examine the documents and determine their relevance at a time when they could incorporate them into their discovery planning, case preparation, trial strategy, and use at trial for cross-examination and other purposes.”
Judge Cobb concluded that the Plaintiffs’ discovery violations “demonstrate deliberate and contumacious disregard of this court’s authority, as well as behavior evincing deliberate callousness to the discovery process.” Judge Cobb also concluded that the Defendants presented clear and convincing evidence that the Plaintiffs and their representatives “intended to interfere with the judicial system’s ability to impartially adjudicate this matter by improperly influencing the trier of fact and by unfairly hampering the presentation of the Defendants’ claims and decisions.” Further, although Judge Cobb acknowledged that striking a party’s pleadings is a “severe sanction,” based on the “egregious” violations of discovery orders and the false testimony by the Plaintiffs and their representative, striking the pleadings is “the only practical alternative to resolve this matter.”
Based on these findings and conclusions, Judge Cobb granted the Defendants’ Motion for Contempt and Sanctions, striking the claims to quiet title and granting good and marketable title to the subject properties in favor of the Defendants. Thereafter, Judge Cobb entered a partial judgment quieting title in favor of Oceanside and DBKN.
The primary issue before this Court is whether Judge Cobb abused his discretion by striking a portion of the Plaintiffs’ pleadings as a sanction for violating discovery orders and presenting false testimony. See Morgan v. Campbell, 816 So.2d 251, *219 253 (Fla. 2d DCA 2002) (noting that an appellate court reviews an order imposing sanctions under an abuse of discretion standard). As we conclude that Judge Cobb did not abuse his discretion, we affirm.
In Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983), the Florida Supreme Court succinctly explained:
[T]he striking of pleadings or entering a default for noncomplianee with an order compelling discovery is the most severe of all sanctions which should be employed only in extreme circumstances. A deliberate and contumacious disregard of the court’s authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness.
(Citations omitted); see also Metro. Dade Cnty. v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999) (“It is well-settled ‘that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends.’”) (quoting Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998)).
In the instant case, the record demonstrates that the Plaintiffs’ discovery abuses were protracted. Basically, between September 30, 2003, and the start of trial on May 30, 2006, the Plaintiffs assured the Defendants that, except for certain telephone bills, all documents responsive to discovery requests and orders had been produced. During this nearly three-year period, even after the trial court withheld its ruling on motions for contempt and sanctions, the Plaintiffs continued to violate discovery orders. It was not until after the trial court had completed five days of trial that the Plaintiffs announced that they had located certain documents, which allegedly favored their position. When trial continued, the Plaintiffs attempted to introduce these documents without immediately disclosing that they had also discovered over 68,000 other documents. After the trial court inquired as to where these documents were located, it learned that many other documents were sitting in a filing cabinet at GIRL’s office. Pursuant to the trial court’s order, the Plaintiffs produced these documents, and it was then that the Defendants learned that several documents were “quite relevant” as they supported their affirmative defenses and impeached Bistricer’s, Smith’s, and Fireworker’s testimony on a key issue. As these documents were “quite relevant,” they would have been addressed during the various pre-trial depositions and during Bistricer’s trial testimony. Finally, as these documents were located in active files at GIRL’s office, Judge Cobb was within his discretion to reject the Plaintiffs’ explanation for not producing these documents prior to trial. Under these circumstances, we conclude that Judge Cobb did not abuse his discretion by imposing the severest sanction-striking pleadings. Accordingly, as the remaining arguments pertaining to the entry of the Contempt Order or partial judgment quieting title in favor of the Defendants lack merit, we affirm these orders.
The remaining issues raised by the Plaintiffs as to the entry of final summary judgment in favor of Oceanside, DBKN, and Cronig, lack merit. Accordingly, we also affirm that order.
Affirmed.